# CHARLESTON.

BOGGS, ADM'R v. JOHNSON, ADM'R.

Submitted September 3, 1885.—Decided November 28, 1885.

In a suit by one partner against his co-partner for a settlement of the partnership accounts the statute of limitations begins to run from the time there is a settlement or account stated of the partnership business between the partners made several years after the dissolution of the firm, which they then believed and understood included and adjusted all the assets and liabilities of the firm ; notwithstanding that it may have been subsequently found that there were then a few inconsiderable debts due from the firm still outstanding and unprovided for, which under the circumstances may be supposed to have been forgotten or omitted by inadvertance ; and notwithstanding it may appear from such account stated that there were then a large number of debts due to the firm but which were by it apportioned among the pratners according to their respective interests.

*G. A. Blakemore* for appellant.

*W. H. H. Flick* for appellee.

SNYDER, JUDGE :

At August rules, 1869, Edmund W. Boggs, administrator of James Boggs, deceased, filed his bill in the circuit court of Pendleton county against John D. Johnson, administrator of Samuel Johnson, deceased, and Jacob F. Johnson, to settle the partnership accounts of the late firm of Boggs & Co., composed of the said James Boggs, Samuel Johnson and Jacob F. Johnson. A statement of the nature and object of the suit and the proceedings had in it up to September 9, 1876, may be found in the opinion of this Court pronounced at that date on a former appeal.—9 W. Va. 434.

After the cause was remanded, the circuit court referred it to a commissioner to re-state the accounts between the partners. A report was made which upon exceptions by Samuel Johnson's administrator was twice re-committed and then the final report was made, finding the estate of Samuel Johnson indebted to the other members of the late firm of Boggs & Co. $2,512.44 as of August 30, 1878. The administrator of Samuel Johnson excepted to said final report, *First*, because

the whole account was barred by the statute of limitations, and *Second*, because the report allowed interest on advancements made by James Boggs, the plaintiff's intestate, to the firm during its existence. The court by its decree, entered April 9, 1879, overruled said exceptions, confirmed the report and ordered the administrator of Samuel Johnson to pay out of his intestate's estate the said sum of $2,512.44 with interest thereon from August 30, 1878, and the costs of the suit. From this decree the administrator of Samuel Johnson obtained this appeal and *supersedeas.*

As stated in the former opinion of this Court, James Boggs, Samuel Johnson and Jacob F. Johnson as partners under the firm name of Boggs & Co., carried on a general mercantile business in the town of Franklin, Pendleton county, in this State, from April 1849, to April 1854, Boggs being the owner of the one half of the concern and the Johnsons the other half in equal portions. After the dissolution of the firm in April, 1854, Boggs took the stock of goods on hand at a fixed price and continued the business on his own account at the same place with Samuel Johnson as his clerk. The accounts and notes of the late firm were also left in the hands of Boggs to be closed up and settled. There is nothing in the record to show what was done, if anything, in the way of closing up the partnership business from that time until about May, 1860, when, upon the request of the Johnsons, Boggs made off and exhibited to them the written statement referred to as " Exhibit B," showing the condition of the assets and liabilities of the firm as between the partners themselves at that time. As the result of this suit depends to a great extent upon the effect of said exhibit and as that was the principal question argued on this appeal, I here give it in a condensed form :

*Boggs & Co.*

| 1849 | To JAMES BOGGS, | *Dr.* | |
|---|---|---|---|
| April 10, To am't of invoice, &c. | | $ 3,480 | 62 |
| | To am'ts paid in Balt. at different times between Oct. 1849, and Oct. 1854 | 13,790 | 88 |
| 1854 | | | |
| April 10, To int. on am'ts paid in Balt. to date | | 1,907 | 89 |
| | To expenses to and from Balt. | 70 | 00 |
| | To rent of store-house five years | 175 | 00 |
| | | $19,424 | 39 |

| | | |
|---|---:|---:|
| Deduct last invoice.................................... | $2,776 59 | |
| Boggs received from firm............................ | 9,217 88 | |
| Cash  .......... ............ ... . ..  .......... ... | 300 00 | 12,294 47 |
| Amount due Boggs........ .. .  ...................... ........ | | $ 7,229 92 |
| Boggs' portion of bad debts... ...................... .. .. .... | | 2,322 77 |
| Balance . ........ ...  .. ... ......  . .... .. | | $ 4,907 15 |
| Supposed good debts  . ......................................... ... . | | $ 5,623 45 |
| Balance, *supra* ....... ........ ... ......... ... .. ... ...... .. | | 4,907 15 |
| Surplus over Boggs's investment   .. ... . .  ... | | $  716 30 |
| Jacob T. Johnson received   ... ... .  .. | $2,886 03 | |
| To your part of bad debts   ...  ...... | 1,161 38 | 4,047 41 |
| By your investment  .... .. .. ...- .. .. ... .. .. | | 1,778 11 |
| | | $ 2,269 30 |
| Samuel Johnson received   .... .. .. . | $4,303 54 | |
| To your part of bad debts ............. .. .... | 1,161 38 | 5,464 92 |
| By your investment . .... ... .. .... ...... ... .... | | $ 2,000 00 |
| | | $ 3,464 92 |

James Boggs died in January 1862, and Samuel Johnson in July or August of the same year. Jacob F. Johnson, the surviving partner, in 1866 by a written agreement, signed by him and the administrator of Boggs, transferred to the estate of Boggs any interest he might have in the partnership, and the said administrator released him from any liability to said estate on account of the partnership. This made said Johnson a competent witness *against* the estate of said Boggs in this suit under the provisions of secs. 22 and 23 of chap. 130 of the Code of 1868.—*Carlton* v. *Mays*, 8 W. Va. 245.

In regard to the above statement the said Jacob F. Johnson, whose deposition was taken November 3, 1869, testifies: "I asked Boggs to make out his account against the firm; after a long time by being frequently asked to do so, James Boggs made out his account against the said firm, which acount was examined by myself and Samuel Johnson and found correct. I then asked Boggs how he was to be paid; he answered out of the debts due the firm. I then told him, in the presence of Samuel Johnson, to pay himself. The debts due the firm were still in his possession. He, Boggs, said he would make a list of the good and bad debts, and

then, as I understood, he would pay himself. Samuel Johnson continued in the store as clerk for Boggs after the dissolution of the partnership, and in the fall and spring when he, Boggs, was going after goods for himself, he called me, in the presence of Samuel Johnson, and divided the money which had been paid on the partnership debts equally between himself and Samuel Johnson and myself, giving us one half of the amount thus received. We, Samuel Johnson and myself, telling him not to pay us any money that we would have to pay back to him, and on that condition I took my share, one fourth. The papers of the firm remained in his, Boggs' hands up to his death."

This is all the testimony in the cause in regard to said statement. The commissioner reports that after the deaths of James Boggs and Samuel Johnson, the administrator of the former paid off two debts of the late firm, the one of $100.00, and the other of $277.36; also three small clerk's fees. The said administrator testified that he had collected since the war about $750.00 of the class known as "bad debts." These matters, in my view of the facts, are not very material. The important question is, was the claim asserted in the plaintiff's bill barred by the statute of limitations at the time this suit was brought? The solution of this question depends upon the effect of "Exhibit B," interpreted with a due regard to the situation of the parties and the surrounding facts and circumstances. It is contended by the appellant that said exhibit was in fact a final adjustment and closing up of the entire partnership affairs between the members of the firm, and that it was so intended and understood by each and all of them at the time. On the other hand, it is insisted by the plaintiff, that it was not in fact or intended by the partners to be a final adjustment between them, but that it was simply a partial statement of the condition of the partnership at the time. If the the position of the appellant is correct that disposes of this cause; for the claim sued for in that view is clearly barred by the statute of limitations.

"In order to subject a suit brought by one partner against his co-partner to the bar of the statute of limitations, it must not only appear that there has been a dissolution of the partnership more than five years before the institution of the

suit, but that there were no valid claims of debit or credit against or in favor of the firm, paid or received, or outstanding within that time." *Sandy* v. *Randall*, 20 W. Va. 244.

The law has thus been declared by this Court and we think correctly. The doctrine thus laid down is unquestionably the general rule on the subject. *Foster* v. *Risen*, 17 Grat. 321. The case of *Sandy* v. *Randall*, *supra*, was a suit for the settlement of a partnership in which no attempt had been made to settle or close it up among the parties. In that respect it is different from this, because in this it is conceded that there was at least a partial settlement or adjustment of the partnership affairs. There is no dispute that the partnership was in fact dissolved in April, 1854. It is certain, however, that the mere dissolution of the partnership did not start the running of the statute of limitations as between the partners. In order to do that the affairs of the partnership must be fully adjusted and closed. All the debts and liabilities of the firm must have been paid or provided for, and all the assets, including the debts due to it, must have been collected, abandoned or disposed by partition among the partners or otherwise. In the language of the statute there must have been such a closing up of the firm's business among the partners as will effect "a cessation of dealings in which they are interested *together*." Was such the effect of "Exhibit B." in this instance? The amount due by each member to the firm is ascertained and fixed by the exhibit and the correctness of this was assented to by all of them. All the liabilities and assets of the firm, including the debts, good and bad, due to it, so far as the exhibit itself discloses, are embraced and adjusted in it. Upon its face it plainly shows a full settlement of all the partnership affairs, and a division or adjustment of the assets and liabilities among the partners. The rights and liabilities of each partner are definitely fixed and the data given from which, by a simple mathematical calculation, the amount due to or from each partner to the others could be precisely determined. This may be proved as follows: The results on "Exhibit B." show that the respective partners, crediting the whole of the good debts to Boggs and each with his portion of the bad debts, are indebted to the firm as follows: Boggs $716.30, Jacob F. Johnson $2,269.30,

and Samuel Johnson $3,464.92, the whole aggregating $6,-450.52, of which Boggs' share is one half or $3,225.26, from which is to be deducted the $716.30 due from him to the firm, leaving $2,508.96 due to Boggs from the two other partners. Jacob F. Johnson's share of the above aggregate is one fourth or $1,612.63, which being subtracted from $2,269.30, the amount due from him to the firm, leaves him indebted $656.67. Samuel Johnson's share of the aggregate is also one fourth or $1,612.63, which being deducted from $3-464.92, the amount due from him to the firm, leaves him indebted $1,852.29 which being added to the $656.67 due from Jacob F. Johnson amounts to $2508.96, the precise sum due as we have seen to Boggs.

The result will be the same if we entirely eliminate the respective portions of the bad debts credited to the several partners in "Exhibit B.," that is, Jacob F. Johnson will be found indebted to Boggs $656.67 and Samuel Johnson $1,852.29, which two sums aggregate $2,508.96, the amount due to Boggs.

The plaintiff states the contents of this "exhibit B" in his bill and files it as a part thereof. There is no allegation of or attempt to prove either fraud or mistake. The only allegations relied on to sustain the bill are that there was "no full settlement of said partnership," that "said firm then had debts still outstanding unpaid some of which have been but recently settled by the plaintiff, and some are still outstanding," and "that there are still uncollected outstanding debts due said firm."

Whether there was or not a full settlement depends upon the true meaning and effect of "Exhibit B." The proof entirely fails to establish that there were any outstanding debts due the firm other than those included in said exhibit and therein divided among or credited to the partners. All the debts due the firm, whether classed good or bad, were disposed of among the partners and thereafter the respective portions of said debts assigned to each became his individual property. The whole of the good debts were transferred to Boggs and all the bad debts were divided among the partners according to their several interests in the firm. The Johnsons then left their portions of said bad debts in the

hands of Boggs, not as a partner but as their agent to be collected by him as such as far as practicable and applied to the balance found due him by the settlement from them respectively. The fact then that either Boggs or his administrator, the plaintiff, collected some of said bad debts since the settlement is wholly immaterial; because, if so collected they were collected for and as the property of the parties as individuals and not as partners or as partnership assets.

As to the allegation and proof that there were then outstanding unpaid debts due from the firm, it will be observed, that the proof shows there were but two debts of any importance discovered or paid since said settlement. Even these two are of such inconsiderable amount that we may presume, if they were not in some manner provided for either before or at the time, they were simply omitted by inadvertence or forgetfulness. The fact that it is subsequently made to appear that a few inconsiderable items were omitted from a settlement, which on its face appears to be a full settlement, is not of itself sufficient to prove that it was not intended by the parties to be a full settlement. *Prima facie* it will be treated as in full, and the burden to establish it was not so intended is thrown upon the party who seeks to impeach it. Story's Eq. Pl. §§ 251, 800, 802, 527; Adams' Eq. 441 (226); *Shugart* v. *Thompson*, 10 Leigh 434; 2 Dan. Ch'y. 850 ; *Ruffner, &c.* v. *Hewitt, &c.*, 7 W. Va. 585.

By the code of Virginia, which is also the law in this State, it is declared that " an action by one partner against his co-partner for a settlement of the partnership accounts * * the action may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after." (Code of Va. 1860, sec. 5, ch. 149 ; Acts 1882, sec. 6, ch. 102.)

This statute has been repeatedly held to apply to suits in equity as well as actions at law. ( *Coalter* v. *Coalter*, 1 Rob. 79 ; *Marsteller* v. *Weaver,* 1 Gratt. 391; *Foster* v. *Rison*, 17 *Id.* 321 ; *Sandy* v. *Randall*, 20 W. Va. 244.

In *Foster* v. *Rison*, *supra*, the court decided that " a partial settlement to which there is no valid objection, is conclusive upon the parties to it as far as it goes, and leaves open only the unsettled portion of the account; and the

statute begins to run from the time of the settlement as to that portion of the account embraced in it."

In.the case before as both the settlement itself and the evidence in regard to it show that the parties understood it to be a final adjustment of all the partnership business ; that is, that it was understood and believed by them to embrace all the matters relating to the partnership business in which they were interested together, and that it was the intention of the partners thereby to close up their joint affairs.   They apportioned and set apart to each partner his portion of the assets on hand, and so ascertained the liabilities of the respective partners to each other that an action of debt or *assumpsit* could have immediately thereafter been brought by the one against the other for the amount of such liability.   All the parties inspected and approved said settlement, and there is not only nothing in the record to show that it was not understood and intended to be full and final, but on the contrary all the proof and circumstances tend strongly to establish that such was in fact as well as in law the understanding and intention of all the partners.   On the day after said settlement, Boggs might have brought his action at law thereon against Jacob F. Johnson for the $656.67 found to be due from him to Boggs in the manner hereinbefore shown, and likewise Boggs could have brought such action against Samuel Johnson for the $1,852.29 due from him to Boggs as aforesaid.   There then having been a final settlement and "cessation of dealings in which the partners were interested together," in May, 1860, and the plaintiff's intestate having at that time a cause of action against his co-partners for the balances due from them to him, the statute began to run at that date and his demand became barred by it at the expiration of five years next thereafter.

I am therefore of opinion that the circuit court erred in overruling the appellant's first exception to the report of the commissioner.   For this error the decree of said court must be reversed, the said exception sustained and the plaintiff's bill dismissed with costs to the apellant in this as well as the circuit court.

Reversed.   Dismissed.