# CHARLESTON.

## SMITH *v.* ZUMBRO *et al.*

Submitted January 9, 1896.—Decided March 18, 1896.

1. GIFTS—*Donatio Causa Mortis*—DELIVERY OF GIFT.

   Delivery at the time of making the gift is essential to a perfect gift *causa mortis*. It is not the possession of the donee, but the delivery to him by the donor, that is material. An after-acquired possession or a previous and continuing possession of the donee, though by the authority of the donor, is insufficient.

2. GIFTS—POSSESSION OF GIFT.

   The mere possession of the subject of a gift, unaccompanied by proof of its delivery by the donor to the donee, is insufficient to establish it as a gift, either *inter vivos* or *causa mortis*.

3. PARTNERSHIP ACCOUNTS—STATUTE OF LIMITATIONS—SUSPENSION OF STATUTE OF LIMITATIONS.

   In order to subject a suit brought for the settlement of partnership accounts to the bar of the statute of limitations, it must not only appear that there has been a dissolution of the partnership more than five years before the institution of the suit but that there were no valid claims of debit or credit against or in favor of the firm, paid or received or outstanding, within that time. Any claim outstanding, paid or collected by either partner,

would form an item in the account between them, and take the case out of the bar of the statute.

4. PARTNERSHIP ACCOUNTS—DURATION OF PARTNERSHIP.

Until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must, in contemplation of law, have a continuance, so far as respects the winding up of its affairs.

5. PARTNERSHIP ACCOUNTS—CONTRIBUTION.

A partner who takes exclusive possession and control of the assets of the firm on its dissolution, and undertakes to close up the business, is not entitled to contribution from a partner for firm debts paid by him, without making a settlement of partnership accounts.

6. PARTNERSHIP ACCOUNTS.

A case in which an account should have been directed, to settle the partnership accounts.

FREER & ROBINSON for appellants, cited 1 High, Inj. § 22; Sand, Suit Eq. 185; 34 W. Va. 406; 12 S. E. Rep. 724; Code, p. 728; Code Va. 1849; 1 Bart. Law Prac. 100, 104; 17 Gratt. 321; Md. Stats.; 13 Ala. 208; 48 Am. Dec. 52; 30 W. Va. 200; 8 Am. & Eng. Enc. Law, 200; 1 Greenl. Ev. § 74.

LINN & HAMILTON for appellee, cited Code, c. 133, s. 2; 26 W. Va. 821; 20 W. Va. 244; Code, c. 104, s. 18; 28 W. Va. 340; Bump, Fraud. Con. (2d Ed.) 53.

ENGLISH, JUDGE:

On the 14th day of October, 1893, a suit in equity was instituted by George S. Smith against William A. Zumbro (in his own right, and as administrator of the estate of H. A. Zumbro, deceased), Rebecca J. Zumbro, George W. Silcott, Hagan Barr, and Annie E. Barr, in the Circuit Court of Calhoun county, the principal object of which suit appears to have been to settle certain partnership accounts existing between the plaintiff, George S. Smith, and the defendant William A. Zumbro, growing out of a partnership in the mercantile business carried on by them previous to the 11th day of April, 1879.

The bill, among other things, alleges that while engaged in the mercantile business they dealt in timber and staves, and other lumber products, at Grantsville, in said county

of Calhoun, which partnership was dissolved in 1879, so far as the active business was concerned; that during the existence of said partnership the plaintiff and said William A. Zumbro became the purchasers of two parcels of land, containing, respectively, three hundred and seventy five and three hundred and fifty seven acres, situated in said county, which were paid for out of the firm assets, and a deed was made to them for said lands, by the commissioner of school lands, which tracts of lands were purchased and held as partnership property, and that shortly after said purchase the plaintiff and said William A. Zumbro began to cut and remove the timber from said land, and to market and use the same in their general partnership business, until they were enjoined from cutting and removing the same; that shortly after the purchase of said land an action of trespass was instituted against the plaintiff and said Zumbro by one John Bigger, to recover damages for cutting and removing the timber aforesaid, and at the same time the said Bigger brought a suit in equity against the plaintiff and said defendant, to enjoin them from further cutting and removing the timber from said land, and subsequently the said Bigger instituted an action of ejectment against the plaintiff and said defendant Zumbro to recover possession of a tract of one thousand acres of land embracing all of said two tracts purchased as aforesaid, and judgment was recovered by said Bigger in said action of ejectment against said defendants for said land, the costs amounting to two hundred and twelve dollars and forty cents; that during the pendency of said suit in equity an agreement was entered into between said John Bigger, of the one part, and the plaintiff, George Smith, and the defendant William A. Zumbro, of the other part, whereby it was agreed that upon the execution of a bond in the penalty of three hundred dollars, with good security, the plaintiff and said defendant should have the right to remove the timber on said land which had then been cut, and should be liable upon the said bond for the value of such timber in its natural state, in the event the said Bigger's right to said land should be established; that said bond was executed with security, and that, by reason of the right of

said Bigger to the said land being established by the action of ejectment aforesaid, the plaintiff and the said defendant became liable for at least three hundred dollars on the bond aforesaid, and on the 9th day of April, 1891, the plaintiff paid to the attorney representing the estate of said Bigger the sum of three hundred dollars, and took his receipt therefor, which is filed as an exhibit with plaintiff's bill.

It is also alleged that on the same day the plaintiff paid to said attorney two hundred and twelve dollars and forty cents, costs of said ejectment, also the sum of twenty six dollars and ninety five cents, costs of said action of trespass, and eighty one dollars and eighty five cents, costs of the suit in equity, for each of which sums he took said attorney's receipts, which are exhibited with the bill.

It is further alleged in plaintiff's bill that the said firm of Zumbro & Smith on the 11th day of April, 1879, executed to Smith, Hanway & Co. their promissory note for one thousand and one hundred and seventy three dollars and ninety two cents, due one day after date, on which several payments set forth in the bill were made, and taken into account between plaintiff and said defendant on settlement, and that plaintiff had made several other payments on said note which have not been taken into any account or settlement between him and the said defendant, the receipts for which payments are exhibited with the bill, and on the 1st day of October, 1893, the plaintiff lifted said note by paying two hundred and sixty one dollars and forty three cents, which note so lifted is filed as an exhibit with the plaintiff's bill; that all the matters of said firm of Zumbro & Smith, up to the date of said suit, have been settled, except said payments made by the plaintiff on account of the litigation concerning the land claimed by said John Bigger, and the payments made by the plaintiff on the said note of Smith, Hanway & Co. since the 6th day of May, 1881; that there are no assets of the firm in the hands of the plaintiff, or of the said William A. Zumbro, or elsewhere, out of which payments to the plaintiff can be provided for, for the amount due him from said Zumbro on account of said several payments, one-half of each of

which, the plaintiff charges, he is entitled to receive from said Zumbro; that the said Zumbro is, and has been for many years, insolvent; that after the dissolution of the active business of the co-partnership aforesaid the said Zumbro continued in the mercantile business in his own name, and with other persons, and contracted a large amount of indebtedness, which he still owes, and that he has resorted to many schemes and devices to cover up his property and withdraw the same from his creditors; that on the 7th day of January, 1891, Hester A. Zumbro, his wife, departed this life intestate, and without issue, leaving the said William A. Zumbro, her husband, her sole heir, as to all her personal estate of which she died seised, which in value amounted to a considerable sum, and on the 13th day of January, 1891, the said William A. Zumbro qualified as her administrator, and undertook to show the appraisers who were appointed the property of his intestate, and did show them property to the amount of two hundred and eight dollars and fifty five cents, but the plaintiff alleges that said Zumbro fraudulently concealed from said appraisers the greater part of the personal estate of said decedent, and almost the entirety thereof, for the purpose of defrauding the creditors both of said decedent and of himself; that the said decedent was at the time of her death the owner of five several promissory notes executed to her by the defendant George W. Silcott, dated on the 13th day of May, 1890, and payable, respectively, in one, two, three, four, and five years after date, and each calling for the sum of three hundred dollars with interest from date; that at the time of such appraisement the said William A. Zumbro, for the fraudulent purposes aforesaid, concealed from the appraisers the existence of such notes, and on the day following such appraisement, for the purpose of furthering his fraudulent designs, he, as such administrator, assigned and transferred the said notes to his daughter, the defendant Rebecca J. Zumbro; that no consideration whatever was paid him, either in his capacity as administrator, or in his private capacity, by said Rebecca J. Zumbro, and that no valuable consideration or valid reason existed why he should make such transfer to her; that said Rebecca J.

Zumbro accepted said notes with the full knowledge of the fraudulent intentions of the said William A. Zumbro, and with the intent on her part to aid and assist the said William A. Zumbro in delaying, hindering, and defrauding the creditors of said decedent, H. A. Zumbro, and the creditors of William A. Zumbro; that the debts of said decedent, H. A. Zumbro, were few in number, and with the exception of about one hundred and eighty dollars, which was due from her estate to the plaintiff, and which was paid after suit was brought therefor, were small in amount, so that the greater part of the personal estate of said decedent, including the notes aforesaid, descended upon the said William A. Zumbro, and became liable for his debts; that said five notes were executed by said G. W. Silcott to the said H. A. Zumbro as part of the purchase money for a certain house and lot in the town of Grantsville, Calhoun county, W. Va.; that the full amount of the purchase money was two thousand dollars, of which five hundred dollars was paid at the delivery of said deed, and the residue is represented by the notes aforesaid, for which a vendor's lien is reserved in the deed to said Silcott, a copy of which is exhibited, which house and lot were subsequently sold and conveyed by said G. W. Silcott to Annie E Barr (wife of Hagan Barr) and Hagan Barr, who were to pay off and discharge said notes of G. W. Silcott, as part of the consideration therefor; that the said Rebecca J. Zumbro has, since the assignment to her of the notes aforesaid, collected from the said Hagan Barr two of the notes aforesaid, being the first two falling due, and that she has collected a large part of the note falling due on the 13th of May, 1893, and the residue thereof was applied in discharge of a debt due against the estate of the said H. A. Zumbro, deceased, with the assent of the said Rebecca J. Zumbro, and that the said William A. Zumbro and Rebecca J. Zumbro were endeavoring to get from said Hagan Barr and the said Silcott the amount of the other two notes, which would mature May 13, 1894, and May 13, 1895, respectively, to further embarrass, hinder, delay, and defraud the creditors of the said William A. Zumbro, and had, by way of inducement, offered them large discounts if they would pay said notes,

but as yet the same had not been paid by said Barr or Sil-
cott; that all of the debts of said H. A. Zumbro have been
paid, and that the money to become due from the said Sil-
cott or Barr will, as between the said William A. Zumbro
and Rebecca J. Zumbro, and the creditors of the latter, be
liable to the demands of said creditors; that the said Re-
becca J. Zumbro had no visible estate, and, if she should
become possessed of the proceeds of the unpaid notes afore-
said, the plaintiff would have no available remedy, at law
or in equity, to recover the same from her.

And plaintiff prayed that the defendants George W.
Silcott and Annie E. Barr, and each of them, be enjoined
from paying the said Rebecca J. Zumbro or William A.
Zumbro (in his own right, or as administrator of H. A.
Zumbro, deceased), or any other person, the amount due
by said notes, or either of them, and that the said Rebecca
J. Zumbro and William A. Zumbro (in his own right, and
as administrator as aforesaid) be enjoined from assigning,
delivering, or disposing of, to another, such notes, or any
part thereof, and from instituting any suit or proceeding to
collect the same; that the plaintiff might have a decree
against the said Zumbro for the amount due him as afore-
said, and that the amount to become due upon said notes
be applied thereon when due; and that the plaintiff be au-
thorized to enforce the payment of the same by appropri-
ate proceedings in this cause or otherwise, and, if necessary
for the purpose, that the said Rebecca J. Zumbro be re-
quired to refund or pay to the plaintiff the amount re-
ceived by her upon the three notes aforesaid, or so much
thereof as might be necessary.

The defendants William A. Zumbro (in his own right, and
as administrator of H. A. Zumbro) and Rebecca J. Zumbro
demurred to the plaintiff's bill, which demurrer was over-
ruled, and thereupon the defendants William A. Zumbro
(in his own right, and as administrator of H. A. Zumbro,
deceased) and R. J. Zumbro tendered and filed their an-
swers to the plaintiff's bill, putting in issue the matters
therein alleged.

The answer of R. J. Zumbro alleges, among other things,
that on the 4th day of April, 1893, she assigned and trans-

ferred, for a full, valuable, and sufficient consideration, all
of the unpaid notes of G. W. Silcott for the Grantsville
property to Ida R. Brown, long before the institution of
this suit, and that said Brown was then the sole owner of
said notes.

The plaintiff thereupon filed an amended bill, making
the said Ida R. Brown a party, and alleging that said as-
signment was made in furtherance of the design on the
part of said William A. Zumbro to hinder, delay, and de-
fraud his creditors, and without any valuable consideration,
and alleging that said Ida R. Brown had no money or
means with which to purchase said notes. The amended
bill was answered by William A. Zumbro, Rebecca J. Zum-
bro, and Ida R. Brown, putting in issue its allegations, and
the plaintiff replied generally. Depositions were taken by
both plaintiff and defendants.

On the 16th day of June, 1894, a final decree was en-
tered in the cause, directing that the defendant William A.
Zumbro do pay to the plaintiff, George S. Smith, the sum
of one thousand two hundred and thirty eight dollars and
thirty five cents, with interest thereon from the 15th day
of June, 1894, together with the costs of the suit; decreeing
that the assignment of said two notes for three hundred
dollars each, dated May 13, 1890, and payable, respectively,
on the 13th day of May, 1894, and the 13th day of May,
1895, by William A. Zumbro, administrator of II. A. Zum-
bro, deceased, to R. J. Zumbro, and the assignment thereof
by her to the defendant Ida R. Brown, were fraudulent,
null, and void as to the rights of the plaintiff, and direct-
ing that the title and claim of the said R. J. Zumbro and
of the said Ida R. Brown to said notes be declared fraudu-
lent and void as to the rights of the plaintiff, and that the
plaintiff had the right to receive the amount of each of said
notes, and to enforce the collection thereof; requiring said
William A. Zumbro, as such administrator, and in his own
right, within twenty days, to execute and file a release of
the vendor's lien retained in the deed from John Hamilton,
trustee, and others, to George W. Silcott, dated May 13,
1890, to be held as an escrow until the said notes shall
have been paid to the plaintiff, and, upon his failure to ex-

ecute such release, directing a special commissioner therein appointed for the purpose, to execute and file such release; and directing that any sum which might be paid to the plaintiff on account of said notes should operate as a credit upon the amount of debt, interest, and costs decreed the plaintiff, as of the date or dates of such payments; and ordering that the injunction awarded in the cause be made perpetual. And from this decree William A. Zumbro, Rebecca J. Zumbro, and Ida R. Brown obtained this appeal.

The first error relied on by the appellants is as to the action of the court in overruling the demurrer to plaintiff's bill because the plaintiff had an adequate remedy at law. This position, however, is not contended for in the appellants' brief. It is, however, claimed that the bill is multifarious, and that the demurrer for that reason should have been sustained. When, however, the bill is referred to, it is found that it has for its object the settlement of a partnership account between the plaintiff and the defendant William A. Zumbro, alleging that there would be a balance due the plaintiff on settlement; and what is alleged in the bill in reference to the fraudulent assignment of the George W. Silcott notes is merely ancillary, and for the purpose of collecting any amount which may be found due on the settlement of said partnership accounts. The settlement of accounts between partners has always been considered as falling within the peculiar province of a court of equity. And, again, we can not regard the bill as multifarious, applying the principles which govern in such cases. In a note to Sand's Suit in Equity (page 12), after citing 1 Daniell, Ch. Prac. 437; *Stuart's Heirs* v. *Coalter*, 4 Rand. (Va.) 74—it is said: "These cases establish that when the matter demanded against one defendant is separate, distinct, and unconnected with the matter demanded against another defendant, and neither is at all interested in the defense to be made by the other, the bill asserting these several demands will be considered multifarious, and demurrable for that cause." Story, Eq. Pl. § 539, says: "The conclusion to which a close survey of all the authorities will conduct us seems to be that there is not any positive, inflexible rule as to what, in the sense of courts of equity, constitutes multi-

fariousness which is fatal to the suit on demurrer. These courts have always exercised a sound discretion in determining whether the subjects-matter of the suit are properly joined or not, and whether the parties plaintiff or defendant are properly joined or not. And it is not very easy, *a priori*, to say exactly what is, or what ought to be, the true line regulating the course of pleading on this point. All that can be done in each particular case, as it arises, is to consider whether it comes nearer to the class of decisions where the objection is held to be fatal, or to the other class, where it is held not to be fatal." In the case under consideration the plaintiff alleges the existence of a partnership between himself and the defendant William A. Zumbro, in the mercantile business; which was settled between them, with the exception of a note outstanding due from them to a Baltimore firm, and a pending litigation in regard to two tracts of land which had been purchased by them as partnership property, with partnership money. The unsettled portion of the partnership business, which the plaintiff, by his bill, is seeking to settle, grows out of money paid by the plaintiff in discharge of said Baltimore note, and the costs and expenses attending the litigation in regard to said tracts of land, which were paid by plaintiff. Surely, the plaintiff had the right to call for and obtain a settlement of these matters in a court of equity. The settlement of this account, and the collection of the balance found due, must be regarded as the object of this bill; and the portion of the bill which assaults the transfers of said notes of G. W. Silcott as fraudulent, and seeks to restrain the collection of said notes by the alleged fraudulent assignees, and to subject the amount recovered upon said notes to the payment of the balance due the plaintiff from said William A. Zumbro, must be regarded as auxiliary, and in furtherance of the main object of the bill; and my conclusion is that the circuit court committed no error in overruling the demurrer.

The next error assigned and relied upon is as to the action of the court in setting aside the assignment of Rebecca J. Zumbro to her co-defendant Ida R. Brown, and decreeing the same liable to any debts or demands of William A.

Zumbro. A proper determination of the question raised by this assignment requires us to look to the relation of the parties to the transaction, and the surrounding circumstances, as shown by the testimony in the cause. It appears that Hester A. Zumbro, the wife of William A. Zumbro, died in the year 1891, intestate and without issue, and that all her personal estate was inherited by her said husband, who qualified as her administrator; that among the personal assets of said Hester were five notes, for three hundred dollars each, executed to her by George W. Silcott for a certain tract of land, which was held jointly by said H. A. and Rebecca Zumbro; the latter owning one-fourth, and the former three-fourths, thereof. Said George W. Silcott contracted to pay two thousand dollars for said tract of land, of which he paid five hundred dollars in cash, and executed his five notes to H. A. Zumbro, for three hundred dollars each, for the residue; being the proportion of the purchase money to which she was entitled. These notes the said William A. Zumbro, as administrator, failed to bring to the attention of the appraisers of the estate of H. A. Zumbro. The fact that these notes were payable to H. A. Zumbro, and were held by her to the time of her death, creates a strong presumption that they were her individual property, and that Rebecca J. Zumbro received the cash payment as her portion of said purchase money. The said William A. Zumbro, as such administrator, assigned two of the said notes, amounting to six hundred dollars, to his daughter, Rebecca Zumbro, and the said Rebecca Zumbro assigned said notes to the grand-daughter of said William A. Zumbro; and, although said notes had been assigned to said Ida R. Brown, they appear at the time of the filing of plaintiff's bill to have been still under the control of said Rebecca J. Zumbro, who was endeavoring to dispose of the same at a considerable discount. Again, if the whole of the cash payment for said land was received by Hester A. Zumbro, then the said Rebecca would only have been entitled to five hundred dollars out of the proceeds of the notes; and yet the administrator conceals them from the appraisers, and assigns the whole of them to his said daughter, Rebecca. What other object could he have had

than the delay and defrauding of his creditors ? The near relationship is a badge of fraud. An attempt was made to show that the notes in controversy were given by Hester A. Zumbro to Rebecca J. Zumbro before her death, and that they were sent to her in a box directed to her; but Rebecca J. Zumbro, in her deposition, states that this box was sent to her, but she did not receive it until after the death of said H. A. Zumbro. This could not be considered a gift *causa mortis*, delivery at the time of making the gift being essential. In the case of *Dickeschied* v. *Bank*, 28 W. Va. 340, this Court held that "delivery at the time of making the gift is essential to a perfect gift *causa mortis*. It is not the possession of the donee, but the delivery to him by the donor, that is material. An after acquired possession, or a previous and continuing possession, of the donee, though by the authority of the donor, is insufficient." Also, that "the mere possession of the subject of the alleged gift, unaccompanied by proof of its delivery by the donor to the donee, is insufficient to establish it as a gift, either *inter vivos* or *causa mortis*.

As to the assignment of the notes to Ida R. Brown, it is true that she states in her deposition that she paid a valuable consideration for said notes, without any intention to commit a fraud (in response to leading questions); but when on cross-examination, she is asked to explain what consideration she paid, and how she paid, she replies that the payment was satisfactory to her, and that she has no more to say on the subject. When these facts are taken and considered in connection with the near relation of the parties and the unsettled condition of accounts between the plaintiff and William A. Zumbro, and the large debt owed by said firm to the firm in Baltimore, we can but conclude that the court committed no error in concluding that said transfers were made with intent to hinder, delay, and defraud the plaintiff, and that the said Rebecca J. Zumbro and Ida R. Brown had notice of such intent.

The defendants William A. Zumbro and Rebecca J. Zumbro, in their answers rely upon the statute of limitions; and counsel for said defendants in their briefs, quote the statute (Code 1891, p. 728, s. 6) which provides

that "an action by one partner against his co-partner for settlement of the partnership accounts * * * may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after." Now, when we come to inquire what is meant by a "cessation of dealings" we find the question has been passed upon in this state in the case of *Sandy* v. *Randall*, 20 W. Va. 247, in which Snyder, J., delivering the opinion of the Court, says: "The courts of Virginia in construing a statute identical with this; have decided that the word 'dealings' embraces any act done after the dissolution of the partnership, in winding it up—such as the collection or payment of debts due to or by the firm. *Foster* v. *Rison*, 17 Gratt. 321. This we regard as the correct interpretation, and the necessary conclusion from it is that, in order to subject the suit to the bar of the statute, it must not only appear that there has been a dissolution of the partnership more than five years before the institution of the suit, but that there were no valid claims of debit or credit against or in favor of the firm, paid or received or outstanding, within that time. For any claim outstanding, paid or collected by either partner, would form an item in the account between them, and take the case out of the bar of the statute;"—citing *Ruffner* v. *Hewitt*, 7 W. Va. 585, in which case this Court held that "until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must, in contemplation of law, have a continuance, so far as respects the winding up of its affairs." The appellants rely on the case of *Boggs' Adm'r* v. *Johnson's Adm'r*, 26 W. Va. 821, in which case this Court held that "in a suit by one partner against his co-partners for a settlement of the partnership accounts, the statute of limitations begins to run from the time there is a settlement or account stated of the partnership business between the partners made several years after the dissolution of the firm, which they then believed and understood included and adjusted all the assets and liabilities of the firm; notwithstanding that it may have been subsequently found that there were then a few inconsiderable debts, due from the firm, still outstanding and unprovided for, which,

under the circumstances, may be supposed to have been forgotten or omitted by inadvertence; and notwithstanding it may appear from such account stated that there were then a large number of debts due to the firm but which were by it apportioned among the partners according to their respective interests." The case we are considering, is however, quite different from that. The debt in this case can not be regarded as inconsiderable; neither would we be warranted in saying it was forgotten or overlooked; and, besides, a suit was in progress, in which the title to two tracts of land owned by the firm was assailed, and the expenses and management of the defense of this suit were among the unsettled business of the firm. It appears that two hundred dollars was paid by the plaintiff on the Baltimore debt on the 9th day of January, 1889, which was before the note was barred, and this suit was brought on the 14th day of October, 1893; so that the statute of limitations would not avail the defendants.

The plea of res judicata is sought to be relied on in the answer of W. A. Zumbro, which is alluded to in the brief of counsel for the appellants, but not insisted upon; and the evidence of any former adjudication is so deficient, and the pleading is so informal, as to prevent us from forming any correct conclusion as to its validity in this case.

It is contended by counsel for the appellants that it was error to decree any sum of money to the plaintiff without first referring the cause to a commissioner, to ascertain what, if anything, the defendant William A. Zumbro owed him. Now, while it is true that in some instances the court may settle an account, and ascertain the balance due, without calling in the aid of a commissioner, yet this cause should have been referred to a commissioner, to ascertain what items of account should have been charged to the defendant W. A. Zumbro. Among other things, he claims that the two tracts of land belonged to the plaintiff, and that he should not have been charged with any of the expenses of the Bigger litigation. In the case of Hinkson v. Ervin, 40 W. Va. 111 (20 S. E. 449) this Court held "that under a bill for settlement of partnership accounts the burden of proof is on the plaintiff, and if he can not furnish

sufficient proof to establish a partnership, and also to enable a commissioner to state a partnership account, his suit necessarily fails;" also, "that a court will not undertake to adjust the rights of parties without satisfactory means of ascertaining what their rights are, and when an account can not be safely stated, and the true balance between the parties ascertained." And again, in the case of *Compton* v. *Thorn's Adm'r* (decided March 20, 1894; Ct. App. Va. (19 S. E. 451) it was held, "A partner who takes exclusive possession and control of the assets of a firm, on its dissolution, and undertakes to close up the business, is not entitled to contribution from a partner for firm debts paid by him, without making a settlement of partnership accounts." Under these rulings, and in view of the circumstances of this case, it should have been referred to a commissioner, to ascertain whether the plaintiff and defendant William A. Zumbro were partners in said tract of land; also, the character of the Smith, Hanaway & Co. debt, and how, when, and by whom the same was paid; and to settle the partnership accounts of the firm of Zumbro & Smith—and it was error not to make such reference.

The decree is erroneous in another respect. It bears date on the 16th of June, 1894, and it finds the aggregate due from the defendant William A. Zumbro to the plaintiff to be one thousand, two hundred and thirty eight dollars and thirty five cents, with interest thereon from the 15th day of June, 1894, when the law requires that the aggregate of principal and interest to the date of the decree, and the amount so decreed, shall bear interest from the date of the decree.

For these reasons the decree complained of must be reversed, and the cause remanded, with costs to the appellants.