MARY SPINA, *an infant, etc. v.* J. HOWARD HUNDLEY *et al.*

(CC 586)

Submitted May 17, 1938.   Decided June 28, 1938.

*Clark, Woodroe & Butts,* for plaintiff.

*Herbert L. Carney,* for defendant Charleston National Bank.

KENNA, JUDGE:

This is a case certified by the Circuit Court of Kanawha County on questions arising upon a sustained demurrer to the answer of the Charleston National Bank to the amended bill in equity filed by John E. Amos, the next friend of Mary Spina, infant, against J. Howard Hundley and the Charleston National Bank.

Considering that " * * * a demurrer reaches back to the first fault in the pleading of either party, * * * " (*Fisher* v. *Charleston,* 17 W. Va. 595, 614) we are first concerned with the question of whether the bill of com-

plaint, the supplemental bill, and the amendment to the supplemental bill contain allegations sufficient to make out a cause in equity.

The plaintiff's material allegations show that on February 4, 1934, Sam Spina died leaving Rosa Spina, his wife, and Mary and Tom Spina, infants, the named beneficiaries of a life insurance policy in Hercules Life Insurance Company in the amount of $1,000.00, and $500.00 each, respectively, which was subsequently paid. On the 26th day of June, 1934, Rosa Spina was appointed guardian for both the infants. Shortly thereafter, she employed J. Howard Hundley, attorney-at-law, to collect the amount payable under the insurance upon the life of Sam Spina. Three days after Hundley was employed, the Hercules Life Insurance Company issued "drafts", dated June 28, 1934, one for $1,000.00 payable to the order of Rosa Spina, one for $500.00 payable to the order of Rosa Spina, guardian of Tom Spina, and one for $500.00 payable to Rosa Spina, guardian of Mary Spina. All three of these "drafts" were endorsed by Rosa Spina, who simply made her mark with W. J. Daugherty as a witness, and by J. Howard Hundley. Rosa Spina died July 9, 1934. Plaintiff's amended and supplemental bill alleges, evidently due to typographical error, that these "drafts" were paid on July 22, 1934, thirteen days after the death of Rosa Spina. The stamped endorsement of the Chicago Clearing House shows that they were paid July 2, 1934, a week prior to the death of Rosa Spina. According to the allegations, J. Howard Hundley received the proceeds of each draft, and on the 10th day of July, the day after the death of Rosa Spina, he drew his check payable to the order of Rosa Spina for the sum of $1,-400.00, and in the blank space upon the face of the check placed the notation "In full Ins. policies." The bill alleges that neither the check nor any part of the sum of money represented thereby was ever received by Rosa Spina, but that the check was in some manner received by the Charleston National Bank and cashed by it, and that no part of the amount represented by the check was

received by the infant plaintiff nor by her guardian, and that the sum of $500.00, being the proportionate part of the said $1,400.00 belonging to the infant plaintiff, is due, owing and payable to her.

The bill alleges further that no part of the amount payable to the beneficiaries under the life insurance policy, which had been received by Hundley, has ever been received by the infant or by her guardian, nor mingled with her estate, but that it was received by J. Howard Hundley and a part of it was transmitted by him to the defendant bank; and that the plaintiff's part is being withheld from her by Hundley and the bank.

An inspection of the check for $1,400.00, drawn to the order of Rosa Spina and signed by J. Howard Hundley, shows that it bears the endorsement of Rosa Spina by the Charleston National Bank, executor of her estate, and that it is perforated in a manner indicating that it was paid on August 29, 1934, or very shortly after the Charleston National Bank qualified as executor of the estate of Rosa Spina.

The clear-cut contention seems to be that the Charleston National Bank takes the position that it had no information and is not chargeable with knowledge that the infant plaintiff had an interest in the fund which was paid over to it; on the other hand, the plaintiff submits that the duty which arose devolved upon the Charleston National Bank in its fiduciary capacity; that in that capacity, it handled as executor of the estate of Rosa Spina, a sum sufficient to have discharged the interest of both infants, and that if it had exercised proper care and made proper inquiry, the interest of the infant plaintiff in the amount of money turned over to the Charleston National Bank would have been adequately protected.

Both counsel for the plaintiff below and for the defendant used the term "conversion" in their effort to describe and classify the transaction involved. We very much doubt that it should be termed or treated as a conversion upon the chancery side of the court. Were it entirely that and nothing more, there might be a difficulty con-

cerning jurisdiction which would arise upon dealing with it in a chancery court as purely a conversion. However, we are of opinion that the matters alleged on behalf of the infant plaintiff show quite distinctly that her interest in the insurance money payable upon the death of Sam Spina constituted the infant's interest in that money a trust fund after it came into the hands of the Charleston National Bank; and viewing the matter in this light, we are clearly of the opinion that the bill of complaint is not demurrable. Ignoring the fact that the bill discloses the Hercules Life Insurance Campany's "drafts" upon the face of each of which was a full statement of the matters that were to be discharged upon payment of the "draft", and that each individual "draft" must be accompanied by the other two before any of them would be paid upon presentation, were each endorsed by the Charleston National Bank; and ignoring further the fact that as executor of the estate of Rosa Spina it was chargeable with knowledge of the fact that Hundley's $1,400.00 check was drawn to her order a day after her death and was not presented for payment until fifty days after that time, it is perfectly apparent from the direct allegations of the bill that the bank is charged with having received $1,400.00 after its appointment as the executor of Rosa Spina without knowing why that sum of money was paid to it as such executor, where it came from nor why, the nature of the obligations that it would discharge nor any of the matters which would have been disclosed to it had it made diligent inquiry concerning the funds coming into its hands.

An executor is required not only to perform his duties with the utmost good faith and fidelity, but also to exercise the care and diligence that a reasonably prudent and competent person would exercise. *Harris* v. *Orr*, 46 W. Va. 261, 33 S. E. 257, 76 Am. St. Rep. 815. The bill of complaint, the supplemental and amended bill plainly charge that the loss of the plaintiff has been due to the failure of the Charleston National Bank, as executor, to exercise the diligence and make the inquiry that a reas-

onably prudent and competent person would under the circumstances have exercised and made.

The right of recovery, ignoring the distinction between law and chancery, is dealt with in the following cases, each holding that there is a right of recovery against a fiduciary (executor or administrator) who administers property not belonging to the estate of his decedent: *Corney* v. *Corney,* 257 Ill. App. 13, 20; *Stockmen's State Bank* v. *Merchants' & Stock Growers' Bank,* 22 Ariz. 354, 357, 197 Pac. 888; *McCustian* v. *Ramey, Admr.,* 33 Ark. 141; *Nye* v. *United States Fidelity & Guaranty Co.,* 225 Mo. App. 593, 37 S. W. (2d) 988.

As sustaining the same proposition and holding further that there can be, under similar circumstances, an individual recovery against the fiduciary, see *Collins* v. *Denny Clay Co.,* 41 Wash. 136, 82 Pac. 1012; *Grier* v. *Huston* (Pa.), 8 Sargeant & Rawle 402, 11 Am. Dec. 627; *DeValengin's Administrators* v. *Duffy* (U. S.), 14 Peters 282, 10 L. Ed. 457; *Boshears* v. *Anderson,* 140 Ark. 144, 215 S. W. 702; *Sims* v. *Hipp,* 216 Ala. 439, 113 So. 296.

As discussing a question apparently not raised in any of the foregoing cases as to whether such right of recovery should be pursued on the law side or on the chancery side of the court, and as holding that there may be a recovery in a chancery court, see *Orcutt* v. *Gould,* 117 Cal. 315, 49 Pac. 188; *Silsby* v. *Wickersham,* 171 Mo. App. 128, 155 S. W. 1094.

In the light of reason and based upon the foregoing authorities, we have no difficulty holding the bill and supplemental and amended bills good on demurrer as and for the recovery of a trust fund by him for whose benefit the implied trust was raised.

Having held that the plaintiff's bill of complaint, supplemental and amended bill is not demurrable it follows that if there are sufficient undenied material allegations therein to entitle the plaintiff to recover, the demurrer to the answer of the Charleston National Bank was properly sustained. That answer admits that the Charleston National Bank received from Hundley a check dated July

10, 1934, and drawn to the order of Rosa Spina on the Charleston National Bank for the sum of $1,400.00; that the Charleston National Bank received the proceeds of that check which it disbursed as executor of Rosa Spina; that the proceeds of the three "drafts" on the Hercules Life Insurance Company came into the possession of Hundley, having been paid to him by Charleston National Bank; and, finally, simply asserts that the Charleston National Bank did not know and was not informed of anything as to the interest of the infant plaintiff. The answer nowhere alleges that the Charleston National Bank, as executor, made inquiry or undertook in any way to discover, the source or nature of the $1,-400.00 payment which it received.

For the foregoing reasons, we are of the opinion that the answer contains no denial of the material allegations of the bill of complaint and the supplemental and amended bill and consequently that the demurrer thereto was properly sustained by the Circuit Court of Kanawha County, the decree of which is hereby affirmed.

*Affirmed.*