# CHARLESTON.

## D. E. Cox v. D. L. Davis *et al.*

Submitted February 10, 1920. Decided February 17, 1920.

1. CONTRACTS—*Gratuitous Service Not Sufficient Consideration for Subsequent Promise to Pay Therefor.*

   Services rendered and benefits conferred, gratuitously do not constitute a sufficient consideration for a subsequent promise to pay therefor, whether such promise be merely verbal or written. (p. 606).

2. SAME—*No Obligation for Gratuitous Services Without an Antecendent or Contemporaneous Promise Under Which the Services Were Rendered.*

   Services rendered and benefits conferred, under circumstances rendering lack of expectation to be compensated therefor highly probable, impose no obligation to make such compensation, in the absence of proof of an antecedent or contemporaneous promise thereof, under which the services were rendered or the benefits conferred. (p. 606).

3. SAME—*Work and Labor—Promise to Pay for Board and a Store Account is Not Implied Between Closely Related Families; Written Promise by Owner of Realty to Pay one Benefitted its use for Store Account Made at End of Their Relation is Without Consideration.*

   The law raises no implied promise to pay for board and a small amount of merchandise, or either of them, in the case of residence of two closely related families, in a dwelling house owned by the head of one of them, while the head of the other conducts a mercantile business in another building also owned by the former, no rent being paid in either case, and there is a general mingling of services and benefits, between the two families, in both the home and the business, in the absence of proof of any antecedent or contemporaneous agreement, intent or purpose to have an accounting between the parties; and a written promise by the owner of the real estate, to pay to the other party compensation for board and a store account, made at the termination of the relation between them, is void for lack of consideration. (p. 606).

Appeal from Circuit Court, Gilmer County.

Bill to enforce vendor's lien by D. E. Cox against D. L.

Davis and others.   From a decree dismissing the bill, plaintiff
appeals; D. L. Davis being sole appellee.

*Reversed; decree for plaintiff.*

*J. Ramsey* and *C. M. Bennett,* for appellant.
*R. F. Kidd* and *L. H. Barnett,* for appellee.

Poffenbarger, Judge:

The decree now under review dismissed a bill filed for en-
forcement of a vendor's lien, the debtor having denied liability
for the debt and right in the creditor to sell the property for
satisfaction thereof.

The defense is founded upon a claim or contention in the na-
ture of a defeasance, it being insisted that the note secured by
the lien was never to be paid, but was to be satisfied or defeated
by a paper executed by the payee thereof, shortly before its date,
by which she agreed that a board bill and store account, aggre-
gating a sum equal to the note, should be set off against it. Re-
garding the two transactions, execution of this paper and of
the note and deed, as constituent elements of a single larger one,
the trial court sustained the contention of the defendants.

This suit was brought by the assignee of the note and he took
it about ten months after the date of its maturity.   He brought
his suit against the assignor as well as the maker of the note
and grantee in the deed.   The latter disclaims any interest in
the property as well as ultimate liability for the debt.   In the en-
tire transaction, he claims to have represented his brother who
is the son-in-law of the payee, although he took the conveyance
of the property and executed the note in his own name.

The property is a piece of land, containing eleven acres and
situated at Cox's Mills in Gilmer County.   At and before the
date of the note and deed, a dwelling house and a store building
stood on it.   In October, 1905, Mary A. Nicholson, the payee
of the note, purchased it from Homer Mason who seems then
to have been conducting a store in the store building.   At or
about the same time, her son-in-law, Zack Davis, or he and his
brother, D. L. Davis, purchased Mason's stock of goods and mer-
cantile business and thereafter carried on a mercantile business
in that building.   Just prior to these transactions, Mary A.
Nicholson, while living at a place called Buck Horn, had lost

her house and furniture by fire. After the fire, she and her family seem to have lived for a short time with Zack Davis on Leading Creek. When the Mason property was purchased by her, she and Zack both moved into the house situated on it, with their families, and lived there together for about eight months, at the expiration of which period Mrs. Nicholson conveyed the property to D. L. Davis, in consideration of $1000.00, of which $50.00 was paid and the balance represented by four notes, one for $150.00, two for $250.00 each, and another for $300.00, secured by a vendor's lien on the property. The theory of the defense is that Zack Davis was the real purchaser, but that the transaction was put in the name of D. L. Davis, because Mrs. Nicholson's husband would not join her in a deed to Zack; and also that, in point of fact, the purchase money actually to be paid was only $700.00, but it was necessary to make it appear to be $1000.00, in order to secure execution of the deed by the husband. Hence, the deed recites such consideration and the cash payment and notes represent it. Zack Davis claims to have obtained from Mrs. Nicholson, through A. S. Jones, an intermediary, her agreement to allow him to set off against the last note, $200.00 for the board of herself, her husband and two daughters, while they lived with him and his wife, in her house and while he or he and is brother conducted the store in her building, paying no rent, and a store bill for goods obtained by her from the store during the same period of time. That agreement and the store account, if they ever existed, were both destroyed in a fire which consumed the store. Mrs. Nicholson and some of her daughters deny execution of the paper and the existence of any liability for board and the alleged store account or either of them.

Zack Davis paid the cash payment and the first three notes. About ten months after maturity of the last note, it was assigned to D. E. Cox, for value and without notice of any claim of an equity against it. Sometime afterwards, there was correspondence between Cox and D. L. Davis; according to the testimony of the former, in which no objection was made to the note, other than a claim of credits. None of that correspondence could be produced, however.

Our conclusion renders inquiry as to the application of many

of the legal propositions found in the briefs and urged at the bar unnecessary. Improbability of any purpose on the part of Zack Davis to charge his mother-in-law for the board of herself and her family, or for goods furnished her, while they lived together under the circumstances stated, puts upon him the burden of proof of an express antecedent or contemporaneous promise on her part to pay therefor. They lived together as one family in her house and he conducted his store in her building. She and a daughter did most of the housework, while he and his wife worked in the store. One of the daughters also worked in the store. He paid no house rent nor store rent. Mrs. Nicholson and her daughters say she owned two cows yielding the family milk and butter, and brought with her two hogs which were killed for meat, some potatoes and a lot of turkeys which Zack sold. He denies that she furnished any of the food, but he makes no denial in detail of these specific charges. Under the broad generality of his denial he could admit that she did furnish this property, and then attempt to deny receipt of any benefit from it. The fatal defect in his case is his failure to prove by his own testimony or otherwise that the benefits received by his mother-in-law, under this family arrangement, were bestowed upon her, under any promise by her to pay for them. It is difficult to conceive a relation much closer or circumstances better calculated to raise an implication of gratuitous service and bestowal of benefits. There was a complete and indiscriminate mingling of services and contributions to family support and a business undertaking, admittedly without any charge or intent to charge, on the one side, and without evidence of such intent on the other, until at or near the termination of the relation. And then the demand, if any, was set up as a means of effecting a purchase of property, on more favorable terms than Mrs. Nicholson's husband would assent to, not as a claim or demand based upon any antecedent purpose, intention or agreement. The time, manner and purpose of the assertion of these claims are almost conclusive evidence in themselves of lack of original intention to assert them. They first appear in the effort to buy the property. There is not a particle of evidence that they were ever mentioned or thought of at an earlier date. Mrs. Nicholson's

ownership of the residence and store building is admitted. It is also admitted that no rent was paid. Zack endeavors to avoid the effect of this circumstance by the claim that he was to have the store building and the two acres of ground on which it stood, but he nowhere says he was to pay for them, and, however that may be, he neither owned it nor paid any rent for it. Nor does he disclose the character of the store account. It may have represented groceries consumed by the family of six, including himself and his wife. The existence of any charge on the books, against Mrs. Nicholson, is denied by his sister-in-law who says she had access to them while she worked in the store.

Failure to overcome the legal presumption against the existence of any indebtedness from the payee of the note to the real promisor, arising from the circumstances disclosed, makes the written agreement relied upon, if any, void and unenforcible for lack of consideration. A written promise to pay for gratuitous services, or to repay money advanced or expended in discharge of a moral duty, is not binding. Service so rendered or money so expended constitutes no valid consideration for the promise. The law raises no promise to pay, in such cases. *Gooch* v. *Gooch,* 70 W. Va. 38; *Miller* v. *McKenzie,* 95 N. Y. 575; *Mitcherson* v. *Dozier,* 7 J. J. Marsh, (Ky.) 53; *Coe* v. *Smith,* 1 Ind. 267; Page, Contracts, sec. 319; Elliott, Contracts, sec. 3403.

Upon these principles and conclusions, the decree complained of will be reversed, a decree entered here adjudicating the liability of the property mentioned and described in the bill and proceedings, to sale for payment of the debt therein mentioned, and the cause remanded for execution of such decree.

*Reversed; decree for plaintiff.*