# CHARLESTON.

JAMES TANNER *v*. ADELLE McCREARY *et al.*

Submitted April 19, 1921. Decided May 3, 1921.

1. FRAUDS, STATUTE OF—*One Not a Party to a Verbal Contract for Sale of Land Cannot Interpose Statute as a Defense to Specific Performance:*

   One who is not a party to a verbal contract for the sale of land, or not in privity with the parties thereto, cannot interpose the statute of frauds as a defense in a suit for specific

performance of the contract. This statutory defense is personal and cannot be made by persons who are neither parties nor privies to the agreement. (p. 663).

2. SAME—*Holder of Bare Legal Title Cannot Interpose Defense of Statute of Frauds Nor of Laches in Suit Between Equitable Owner and Purchaser for Specific Performance.*

The holder of the bare legal title to land cannot interpose the defense of the statute of frauds, nor of laches, in a suit between the equitable owner and a purchaser for specific performance of a verbal contract of sale of the land, where the holder of the bare legal title was not a party to the contract. (p. 662).

3. TRUSTS—*Statute of Frauds Has No Application to Express and Implied Trusts in Lands.*

The statute of frauds has no application to express or implied trusts in lands, and parol testimony may be taken to establish either. (p. 664).

Case Certified from Circuit Court, Wood County.

Suit by James Tanner against Adelle McCreary and others. Demurrer sustained, and case certified.

> *Reversed and demurrer overruled.*

*F. P. Moats,* for plaintiff.

*V. B. Archer,* for defendants.

LIVELY, JUDGE:

The plaintiff's bill prays for specific execution of a verbal contract for the sale of two lots of land in the city of Parkersburg sold to him by John Senseman. The plaintiff lived in the eastern part of the State and was engaged in the lumber business and had been, for some time prior to the year 1901, selling lumber to John M. Senseman, who lived in Parkersburg and who was engaged in the real estate business and buying and selling lumber. In that year plaintiff came to Parkersburg and purchased a lot from Senseman designated as lot No. 16 in the Jamison Addition, and sometime afterwards received a deed therefor from Edward McCreary. in whom the legal title was vested. It appears from the bill that sometime prior to that date Senseman and Edward McCreary purchased about four acres of land lying in the

city from A. W. Jamison and laid off the four acres into city lots with streets and alleys and made a plat of the same and recorded it in the county clerk's office. The title to the four acre tract, afterwards laid off into lots by these purchasers, was taken by Edward McCreary for convenience in making the deeds to purchasers. The bill avers that these lots were owned by these two purchasers as partners, trading as McCreary and Senseman and that each partner had equal authority and ownership over the disposition of these lots. A short time after the sale of lot No. 16 the plaintiff purchased lots Nos. 14 and 15 in said addition from Senseman and paid him the purchase money therefor. No deed was then taken but the whole matter was left with Senseman for the purpose of having the deeds made, and with authority to take possession of the lots, pay the taxes thereon and sell the same if an advantageous sale could be made. The plaintiff never met McCreary nor had any negotiations or transactions whatever concerning these purchases with him. In the year 1906 Edward McCreary died testate, making specific bequests of certain of his property, not including the two lots which had been sold by Senseman to the plaintiff, but incorporated a residuary clause in his will by which he left all of his real and personal property, not disposed of, to his wife, Adelle McCreary, a defendant in this suit. The plaintiff remained in the eastern part of the State, where he now lives, but a short time before the institution of this suit, receiving an offer for the purchase of these two lots, he came to Parkersburg for the purpose of closing the sale, when he discovered that the deed had not been made to him, and the title was in the name of Edward McCreary, although he avers that possession of the lots had been turned over to him and that he had paid all of the taxes after the date of his purchase. He then discovered that McCreary had died in 1906 and that his wife, the defendant Adelle, claimed ownership of the property by virtue of the will. He endeavored to obtain title to the property in order to complete his contract for the sale of his lots but was refused; and then instituted this suit against Senseman, joining therein as defendant the holder of the legal title to the lots.

The only appearance to the suit was made by Adelle Mc-
Creary, who demurred to the bill on the ground that the
contract of sale made by Senseman to the plaintiff could not
be enforced under the statute of frauds, and further, be-
cause the plaintiff was guilty of laches.

The circuit court held the bill bad on demurrer because
a parol contract for the purchase of land, on the ground of
part performance, cannot be enforced even where the pur-
chase money has been paid and possession delivered, unless
there have been valuable and substantial improvements
placed on the land, or an altered situation incapable of com-
pensation in money, all in pursuance of the contract in good
faith, under the principles announced in *Smith* v. *Peterson*,
71 W. Va. 364; and various other authorities cited by him
in the opinion sustaining the demurrer. The circuit court
was of the opinion that the bill did not show that valuable
and permanent improvements had been placed on the two
lots by the vendee, thus bringing it within the statute. The
claim of laches insisted upon by the demurrant was decided
against her under the decision in *Mills* v. *McClanahan*, 70
W. Va. 295, and authorities there cited.

The circuit court has, on its own motion, certified the
following questions: ''First: That the plaintiff cannot re-
cover by reason of the provisions in the statute of frauds,
that no action shall be brought upon any contract for the
sale of real estate, * * * * * unless the contract be in writing
and signed by the party to be charged thereby, or his agent.
Second: That if plaintiff ever had a claim it is barred by
laches.''

Elaborate briefs and arguments on these questions certified
have been filed by counsel for the plaintiff, and the demur-
rant, Adelle McCreary.

Both the court and counsel seem to have overlooked the
fact that the plaintiff bought these two lots from J. M.
Senseman, who has made no appearance in the cause. The
purchase money was all paid to him. Edward McCreary
had nothing to do with the making of the contract, which
was made entirely by and between the plaintiff Tanner and
the defendant J. M. Senseman. Senseman is responsible to

the plaintiff for the purchase money paid him, if the title
to the lots fails. Plaintiff did not know McCreary and never
saw him. He was relying on Senseman for his title to all
of the lots purchased from him. He had known Senseman
through many years of satisfactory business dealings with
him, and knew him to be a reliable and responsible man.
This was evident by the fact that he relied on him for his
deed, supposed it had been executed, and for many years
placed his vendor in possession and control of the lots with
authority to sell if an advantageous sale could be made. The
taxes, he alleges, were paid by him through Senseman from
the date of his purchase until the institution of this suit, a
short time before which he discovered that the title was in the
name of Edward McCreary. The bill negatives any negotia-
tions, contract, or transactions with Edward McCreary, and
on demurrer the allegations of the bill must be considered
as true.

Even if the plaintiff had been informed in 1902, when he
purchased the lots from Senseman, that the Jamison Addi-
tion was purchased and owned jointly by McCreary and
Senseman, he would have the right to presume that Sense-
man, the joint owner, could and would deliver him the proper
title papers. At any rate, he did not contract with McCreary
and did not know him in the transaction. It is apparent
that Edward McCreary did not own the Jamison Addition.
He held the legal title for himself and Senseman. Possibly
McCreary's devisee has no interest in these lots, and holds
the bare legal title for Senseman. Just what portion of the
purchase money for the four acres, originally purchased by
them and out of which these lots were carved, was paid by
each does not appear; but there is sufficient in the bill to
show that Senseman has an equitable title in these lots. If
there was an agreement between them in writing that Mc-
Creary should hold the title, it was an express trust; if there
was no such agreement but Senseman paid a part of the
purchase money for the four acres and McCreary took the
title to all, there immediately sprang up a resulting trust
in Senseman's favor for his interest in the land measured
by the proportionate share of the purchase money paid by

him. Where a purchase is had and the legal title is taken in the name of one person, the consideration in whole or in part being paid by another or others, a resulting trust immediately comes into existence from the transaction, and the person holding the legal title will be a trustee only for those who furnished the purchase money. This rule, that whoever supplies purchase money intends the purchase to be for his own benefit, and that the conveyance to another is a matter of convenience between the parties for collateral purposes, is firmly established, and is vindicated by experience from early English times. Perry on Trusts, sec. 126. Does Senseman have the equitable title to these lots? Is he the real owner? If so, this bill which brings both the holders of the legal and equitable title into court would be sufficient to require the transfer thereof to the rightful owner, the plaintiff, if he be entitled thereto, under the prayer for general relief. There is sufficient in the bill to show that Senseman had an interest in these lots at the time he sold them, and that the status has not been changed. Adelle McCreary is not a purchaser. Senseman has made no appearance to the suit. He does not assert nor deny ownership now, nor does he deny ownership at the time he sold to the plaintiff.

It is clear that Senseman alone made the contract with plaintiff and received the purchase money. What right then has Adelle McCreary or any one else other than Senseman to plead the statute of frauds against that contract? It is almost universally held that the defenses arising under the statute of frauds are personal to the parties to the contract and no one else can take advantage of them or require the parties to do so. 20 Cyc. 306, and numerous cases there cited; 25 R. C. L., sec. 380, p. 732; *Chicago Dock Co.* v. *Kinzie,* 49 Ill. 289; *Morrison* v. *Collier,* 79 Ind. 417. "A third party cannot, in a case where his own obligations growing out of the existence of the contract in question are concerned, deny the obligation of the contract upon the party who was to be charged thereby, or take any benefit of the protection which such party could claim in an action brought upon it against himself." Browne on Statute of Frauds, sec. 135.

It is not intended to be decided, or even intimated, that Senseman may avoid the obligation of his contract by pleading the statute of frauds, or laches. The defense is personal to him, somewhat like the defense of usury, limitation, and similar defenses. Whether he shall avail himself of the defense or not is for him to decide; he cannot be deprived of his election by a third party. If he feels that he should discharge the moral obligation although he may have a perfect legal defense, no stranger or third party, not privy to the contract, can complain.

There is another principle of law applicable. The partnership relation existing between Senseman and Edward McCreary at the time of the purchase of the four acres, or the joint purchase and ownership thereof by them, each paying his part of the purchase price, created a trust, either express or resulting, when Edward McCreary took the legal title, and it is exempted from the operation of the statute of frauds. *Currence* v. *Ward,* 43 W. Va. 367; Browne on Statute of Frauds, sec. 80; *Bank* v. *Carrington,* 7 Leigh 566. If the allegations of the bill be true, Adelle McCreary cannot interpose the statute of frauds as against Senseman. Parol testimony is permissible to establish Senseman's title or interest in these lots.

Upon consideration of the petition for rehearing, we conclude that the bill alleges an ownership of some interest in the lots by Senseman at the time of the purchase by plaintiff from him; and that the title to Senseman's interest therein was held by Edward McCreary at the time of his death. There was thus created a resulting trust in Senseman's favor for whatever interest he owned, and which would inure to the benefit of his purchaser, the plaintiff. This is sufficient to maintain his suit. Upon answer and proof he may not be entitled to all the relief prayed for in the bill. We do not mean to anticipate the proof and hold that Adelle McCreary has nothing but the legal title. That depends upon the status as it existed between Senseman and Edward McCreary. While the bill does not charge what portion of the purchase money was paid by either Senseman or McCreary, on the original purchase, it asserts that each had equal

authority and ownership over the disposition of the lots carved out of the original four acres. Senseman seems to have been exercising this alleged authority and ownership, and if the lots were so disposed of and the proceeds properly divided between the joint owners, it would be a practical partition, and the title in Adelle Mc-Creary would be a bare legal one. So far as the equitable interest of Senseman in these lots is concerned, inuring to him by the resulting trust, and afterwards sold to the plaintiff, Adelle McCreary cannot interpose the statute of frauds, or of laches, and thus dismiss the bill; and so answer the questions certified.

*Reversed and demurrer overruled.*