E. A. LEATHERMAN *v.* G. M. SANDERS, *Administrator, etc., et al.*

(No. 8277)

*and*

SOUTH BRANCH VALLEY NATIONAL BANK OF MOOREFIELD *v.* G. M. SANDERS, *Administrator, etc., et al.*

(No. 8278)

Submitted March 4, 1936. Decided March 25, 1936.

*Harry H. Byrer* and *Arthur S. Dayton,* for appellant.

*McCauley, Zimmerman & McCauley* and *Martin & Siebert,* for appellees.

LITZ, JUDGE:

The above styled cases are attachments in equity based upon non-residence of the principal debtor, E. Blair Pancake, now deceased. First National Bank of Romney, garnishee, has appealed from a final decree entered against it in each case.

On November 26, 1926, E. Blair Pancake, as maker, executed two notes for $6,000.00 each and one note for $16,864.03, payable to the order of E. A. Leatherman, for the purchase price of apples belonging jointly to E. A. Leatherman and his brother, Albert R. Leatherman, and grown in 1926 on lands in Hampshire County owned jointly by them. The two $6,000.00 notes were transferred and assigned by E. A. Leatherman to South Branch Valley National Bank of Moorefield, West Virginia. The first of the suits was instituted by E. A. Leatherman against Pancake to recover a balance of the $16,864.03 note, amounting to $15,361.99. The second suit was brought by South Branch Valley National Bank of Moorefield against Pancake, to recover a balance of the $6,000.00 notes, amounting to $7,257.11. An order of attachment, issued in each case at the date of its institution (October 22, 1927) was served the same day on the First National Bank of Romney, of Romney, West Virginia, as garnishee. (The Bank of Romney was also a party defendant in each case.) At the time of service

of the attachment, Pancake was a customer of the garnishee bank but had overdrawn his account. Being advised by the cashier of the bank to consult an attorney concerning the garnishment proceedings, Pancake, on October 26, 1927, took counsel with his lawyer, J. Sloan Kuykendall, who was also attorney for the bank. The conference between Pancake and Kuykendall resulted in arrangement by them to establish an account in the Romney bank in the name of Kuykendall, as attorney, from funds to be furnished by Pancake and used for the purpose of paying checks drawn by him on the bank. The account was opened on the day following and continued for thirty-four days, during which time Kuykendall deposited therein the proceeds of checks and other commercial paper belonging to Pancake, approximating $22,-000.00. All these funds, except one hundred dollars used by Kuykendall, were paid out by him on checks (or orders) of Pancake, the bank notifying Kuykendall, as it had been instructed by Pancake, as the checks came in. Upon depositions and evidence taken in open court, the circuit court held that the funds deposited in the Kuykendall account were subject to the orders of attachment as the property of Pancake, and, accordingly, entered judgment against the First National Bank of Romney, as garnishee, for the amount thereof, with interest.

Errors are assigned to the judgments on the grounds (1) that the order of attachment served on the Romney bank did not contain the *signed* indorsement of the plaintiff suggesting the bank as garnishee; (2) that the evidence taken on the pleadings in open court was improperly considered; (3) that funds coming into the hands of the garnishee subsequent to the service thereof were not subject to the orders of attachment; (4) that the moneys deposited in the Kuykendall account were not subject to the orders of attachment as property belonging to the debtor; (5) that the lien of attachment in the Leatherman case should have been limited to the interest of the plaintiff, E. A. Leatherman in the $16,864.03 note; (6) that the garnishee was improperly charged with interest on the funds affected by the orders of attachment.

First. Section 5, chapter 106, Code 1923, provides that the plaintiff may, *by indorsement on the order of attachment,* designate any person as being indebted to, or having in his possession, the effects of the defendant. The original orders of attachment bore (unsigned) indorsements in the writing of counsel for plaintiffs designating the Romney bank as garnishee. As the apparent purpose of the statute is to insure authentic designation of the garnishee by the plaintiff, we see no reason why the indorsement should be signed if actually made by the plaintiff or his counsel.

Second. It is contended that as attachment in equity is to be conducted as other chancery proceedings, the evidence taken in open court on the issues raised by the pleadings should not have been considered at the hearing. Whether this evidence was proper, makes little difference. There was sufficient testimony by depositions to sustain the findings of the court.

Third. Section 9, chapter 106, Code 1923, provides that the plaintiff shall have a lien, from the time of serving a copy of the attachment upon a garnishee, on the personal property, choses in action and other securities of the defendant in the hands of or due from the garnishee. In section 14, it is provided: "When any garnishee shall appear, he shall be examined on oath. If it appear on such examination, or by his answer to a bill in equity, that *at or after* the service of the attachment he was indebted to the defendant against whom the claim is, or had in his possession or control, any goods, chattels, money, securities or other effects belonging to the said defendant, the court may order him to pay the amount so due by him, and to deliver such effects to such person as it may appoint as receiver; or such garnishee, with leave of the court, may give bond, with sufficient security, payable to such person and in such penalty as the court may prescribe, with condition to pay the amount due by him and have such effects forthcoming at such time and place as the court may thereafter require." Construing these provisions of the attachment laws

in point 5 of *Ringold* v. *Suiter*, 35 W. Va. 186, 13 S. E. 46, this court held: "An attachment served on a garnishee indebted to or having effects of the debtor binds debts existing or effects in the garnishee's hands at the date of service of the attachment, as also debts arising or effects coming to the hands of the garnishee until the answer of such garnishee, but not later than such answer." Judge Brannon, in writing the opinion of the court, said: "What is the period covered by the lien of an attachment as to debts or effects in the hands of a garnishee? Section 9, ch. 106, declares that the lien begins with the service of the attachment, and of course binds debts or effects then in the garnishee's hands; but how long does it continue to attach to and bind new debts arising or effects coming to the garnishee? It certainly continues to attach to new or other debts or effects after that period, for section 14 says that if it appear on examination of the garnishee 'that at or after the service of the attachment he was indebted to the defendant, against whom the claim is, or had in his possession or control any goods, chattels, money, securities, or other effects, belonging to the said defendant, the court may order him to pay,' etc. From this I think the attaching power of the attachment continues up to, but not after, the answer of the garnishee." We see no reason now for reversing this ruling which was affirmed in *Lacy* v. *Greenlee*, 75 W. Va. 517, 519, 84 S. E. 921.

Fourth. The main theory upon which it is contended by the Romney bank that the money deposited in the Kuykendall account was not subject to the lien of the attachments is that all but about $3,000.00 of the funds was used to pay checks given by Pancake for apples from the sale of which the deposits were obtained. Pancake states that the Kuykendall account was maintained for the purpose of meeting these checks. There is no evidence, however, of any understanding between Pancake and the payees of the checks that they would be paid out of special deposits. As was stated in the written opinion of the trial court, the account "was used for all purposes by Pancake, and (was) completely under his control."

As the evidence clearly shows the bank knew that the deposits in the Kuykendall account belonged to Pancake, we are of opinion that they were subject to the lien of the attachments.

Fifth. Although E. A. Leatherman owned only one-half interest in the $16,864.03 note, judgment was entered in his favor against the garnishee for the full amount sued for because Albert R. Leatherman, in his answer filed February 5, 1929, had expressed his willingness thereto. Counsel for the Leathermans contend, as a further basis for the ruling, that legal title to the note was vested in E. A. Leatherman. The reasoning advanced would probably be valid in an attachment at law where the court takes cognizance only of legal title. The rule, however, is different in equity where the actual interests of the parties are considered. In *State ex rel. v. Arthur,* 106 W. Va. 559, 146 S. E. 619, where it was held that the plaintiff in a chancery suit could not prosecute the case for the benefit of himself and others, this court, speaking through Judge Hatcher, said: "An early decision of this court bluntly declares: 'There is no such thing in equity as bringing a suit in the name of one party for the use of another. Equity deals with the real parties in interest.' *Kellam* v. *Sayer,* 30 W. Va. 198, 199. Later decisions have strictly adhered to that ruling. *Bank* v. *Cook,* 55 W. Va. 220; *State* v. *Flanagan,* 77 W. Va. 505; *County Court* v. *Cottle,* 81 W. Va. 469; *Parsons* v. *Parsons,* 94 W. Va. 584."

Sixth. Was the garnishee liable for interest pending the garnishment proceedings? When a garnishee assumes the attitude merely of a stakeholder, there is no reason why interest should be charged against him pending the controversy between creditor and principal debtor. But where he assumes the position of a litigant, for the purpose of withholding the res, the rule should be different. "If the garnishee, instead of merely admitting his indebtedness to defendant, interposes obstacles to plaintiff's recovery against him by filing dilatory pleas, by making difficulties and himself producing unreasonable delay,

or by contesting plaintiff's claim, he will be charged with interest in favor of plaintiff during the pendency of the proceedings against him." 28 C. J., p. 248.

We, therefore, modify the judgment of the circuit court in the Leatherman case by reducing the amount to one-half of the sum recovered, and affirm the judgment entered in the Moorefield bank case.

*Modified and affirmed.*