301 S.E.2d 819

**Flora LATIMER, Arthur L. Latimer, and Arthur L. Latimer Construction Co.**

v.

**Martha Latimer MECHLING, Individually and as Executrix of the Estate of Charles W. Latimer, Mountaineer Construction and Engineering Co., Dino Rotellini, and William M. Smith.**

No. 14274.

Supreme Court of Appeals of West Virginia.

March 30, 1983.

---

Abraham Pinsky & John W. Cooper, Pinsky, Barnes, Watson, Cuomo & Hinerman, Wellsburg, for appellants.

Lester C. Hess, Jr., Bachman, Hess, Bachmann Garden, Wheeling, for Mechling.

Charles D. Bell & J. Park McMullen, Wellsburg, for Mountaineer Const. & Engineering Co., et al.

McGRAW, Justice:

Flora Latimer, Arthur L. Latimer, and Arthur L. Latimer Construction Company, Inc., plaintiffs below, appeal from a judgment of the Circuit Court of Brooke County which upheld a conveyance of real property

by the appellee, Martha Latimer Mechling, executrix of the estate of Charles W. Latimer, to the appellee, Mountain Construction and Engineering Company, Inc. (Mountain Construction), assignee of William M. Smith and Dino Rotellini, appellees herein in their individual capacities. The appellants assign as error the lower court's finding that the executrix did not breach her fiduciary duty in conveying the land, which was part of the estate of Charles W. Latimer, to Mountain Construction, and contend that the trial court erred in refusing to set aside the sale and to grant Flora Latimer's prayer for damages. We find merit in the contentions of the appellants and we reverse the judgment of the circuit court.

Charles W. Latimer died testate in July 1970. In his will, the validity of which is not in question here, the decedent appointed his daughter, Martha Latimer Mechling, executrix of his estate and directed her to sell at public or private sale all real estate owned by him as soon after his death as she deemed proper. The testator specifically provided that the proceeds from the sale were to be divided so that his wife, Flora Latimer, would receive a share equal to the value of her statutory dower interest. The remaining proceeds were to be divided equally among eight named beneficiaries, all children of the decedent. Arthur Latimer, son of the decedent and one of the appellants herein, was not included among the named beneficiaries. The only provision made in the will for Arthur Latimer was a separate bequest of one dollar.

This dispute arose from the efforts of the executrix to sell a 60.3 acre tract of land located in Brooke County which was part of Charles Latimer's estate. After having the estate property appraised by a qualified real estate broker at $18,000 and soliciting bids on the land from several persons, both in person and by her attorney, George Anetakis, the executrix placed an advertisement in local newspapers in November 1971, offering the property for sale. In response to this advertisement, William M. Smith, one of the appellees herein, entered into negotiations with the executrix to buy the estate property. On December 28, 1971, the executrix orally accepted Smith's offer of $28,000 and referred him to her attorney to have the deed prepared. Anetakis thereafter sent letters to each of the heirs to the Latimer estate informing them of Smith's offer and soliciting further bids. In response to this letter, Arthur Latimer submitted a bid of $30,200 on January 6, 1972. The executrix refused to consider this offer, however, stating that she had already sold the estate property to Smith and his partner, Dino Rotellini. On April 26, 1972, the executrix executed a deed conveying the estate tract to Mountaineer Construction, assignee of Smith and Rotellini.

This action was commenced by Flora Latimer, Arthur Latimer and Arthur L. Latimer Construction Company in the Circuit Court of Brooke County on April 27, 1972. The complaint alleged that the conveyance to Mountaineer Construction was fraudulent and constituted a breach of the executrix' fiduciary duty. Arthur Latimer sought to have the deed set aside and to have the court grant specific performance by ordering the executrix to convey the property to him in consideration of a purchase price of $30,200. Flora Latimer sought to recover against the executrix her dower share of $30,200. Arthur L. Latimer Construction Company made no prayer for relief. Pending trial, the court ordered the executrix to pay all uncontested claims filed against the estate, including Flora Latimer's dower share of the $28,000 received in consideration of the conveyance to Mountaineer Construction.

The case moved to trial before a judge on January 21, 1976, and a final order was entered on April 3, 1978. In its memorandum of opinion and findings of fact incorporated into the final order, the trial court found that Arthur L. Latimer Construction Company had no standing to bring suit and that the beneficiaries of the estate had an adequate remedy at law for damages resulting from any fraud or breach of the fiduciary duty and therefore could not maintain an action in equity to have the deed set aside. The court also found that there was no fraud or breach of fiduciary duty involved in the conveyance in that the

executrix believed that she had made a binding contract for the sale of the property with Smith and Rotellini on December 28, 1971. The court ordered that all relief prayed for be denied. It is from this order that Flora Latimer, Arthur L. Latimer and Arthur L. Latimer Construction Company appeal.

The appellants raise twenty-three assignments of error, some of which are clearly without merit.[1] Others are disposed of by our resolution of the major issues presented by the case and we will therefore not address them. The substantive issues before us is whether the executrix breached her fiduciary duty to the beneficiaries of the estate by consummating the transfer of the estate property to Mountaineer Construction.

■ The personal representative of the estate of a deceased acts in a fiduciary capacity. *Owens v. Owens,* 196 Va. 966, 86 S.E.2d 181 (1953); *Virginia Trust Co. v. Evans,* 193 Va. 425, 69 S.E.2d 409 (1952). *See also Claymore v. Wallace,* 146 W.Va. 379, 120 S.E.2d 241 (1961). His duty to manage the estate under his control to the advantage of those interested in it and to act on their behalf. *Lapinsky's Estate v. Sparacino,* 148 W.Va. 38, 132 S.E.2d 765 (1963). *See also King v. King,* 225 Ga. 142, 166 S.E.2d 347 (1969); *Weinstein v. Boyd,* 136 Md. 227, 110 A. 506 (1920). In the discharge of this duty, the executor or administrator of a deceased's estate is held to the highest degree of good faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs. *Lapinsky's Estate v. Sparacino, supra. See also Tavenner v. Baughman,* 129 W.Va. 783, 41 S.E.2d 703 (1947); *Harris v. Orr,* 46 W.Va. 261, 33 S.E. 257 (1899).

■ If, in the administration of the estate, the personal representative undertakes to sell property of the estate, his fiduciary obligation requires him to secure the best price obtainable under the circumstances. *King v. King, supra; Feldman v. Feldman,* 234 Md. 173, 198 A.2d 257 (1964); *Thornton v. McWalter,* 329 Mass. 768, 110 N.E.2d 104 (1953); *In re Bourne's Estate,* 237 N.Y. 341, 143 N.E. 214 (1924); *In re Herbert's Estate,* 356 Pa. 107, 51 A.2d 753 (1947); *State v. Hartman,* 54 Wis.2d 47, 194 N.W.2d 653 (1972). He may not merely sit dormant and accept such offers as are tendered to him, but must make diligent, impartial effort to obtain the best offer possible. *Feldman v. Feldman, supra. See also Vredenburgh v. Jones,* 349 A.2d 22 (Del.Ch.1975); *Probert v. Garrett,* 221 Md. 188, 156 A.2d 651 (1959); *Matter of Estate of Meister,* 71 Wis.2d 581, 239 N.W.2d 52 (1976).

The determination of whether the executor has breached his fiduciary duty in selling the estate property is necessarily dependent upon the circumstances of the sale. Here, the record indicates that late in 1970, the executrix hired an attorney, George Anetakis, to assist her in the administration of the estate and authorized him to

---

**1.** The appellants contend that the circuit court erred in refusing their motions for summary judgment. As the record clearly indicates, there were numerous factual conflicts which warranted the case proceeding to trial.

The appellants also contend that the trial court erred in refusing to allow the introduction into evidence of prior appraisements of the estate property at values of $75,000 and $40,000 respectively. First, the $75,000 appraisement was never filed and was later amended by the executrix' attorney. Secondly, the record clearly shows that evidence of these appraisements was in fact before the court, as both the executrix and her attorney testified as to the existence and amount of the prior appraisements.

It is also contended that the trial court erred in affirming the conveyance of the estate property to Mountaineer Construction when the corporation did not come into existence until February 25, 1972, some two months after the transaction with Smith and Rotellini. It is not contested that the corporation, which was created for the purpose of developing the estate property, is controlled by Smith and Rotellini and is their assignee. There is no contention that the assignment of the property to the corporation is invalid.

Finally, the appellants contend that the circuit court erred in making a finding of no fraud. The appellants assert that the lower court found no *actual fraud* when the appellants were alleging *constructive fraud.* A perusal of the complaint indicates that the allegations went to the issue of intentional or actual fraud as opposed to constructive or legal fraud.

solicit bids on the property. On the advice of Anetakis, the executrix had the property appraised by a qualified real estate broker, who valued the tract at $18,000. On June 4, 1971, Anetakis sent a letter to Arthur L. Latimer Construction Company advising that the executrix was inviting bids on the 60.3 acre tract. By letter dated June 24, 1971, Arthur Latimer, as president of Arthur L. Latimer Construction Company, submitted a bid of $25,200 to Anetakis. The executrix found this offer unacceptable, and neither she nor Anetakis responded to it. In the subsequent months the executrix contacted several persons about buying the property but found no prospective buyer who would offer the price she was seeking.

In November 1971, the executrix placed an advertisement in local newspapers offering the property for sale. On December 18, 1971, William M. Smith, one of the appellees herein, responded to the advertisement and after viewing the property, he offered the executrix $20,000. The executrix rejected this offer and on December 28, after further negotiations, Smith increased his offer to $28,000. The executrix orally accepted this offer after it became clear that Smith would not offer $30,000, and referred Smith to Anetakis for the preparation of the sales agreement and the deed.

On December 29, 1971, the executrix phoned Anetakis and told him of her conversations with Smith and that his attorneys, Messrs. Bell and McMullen, would be contacting him. Anetakis suggested that the executrix contact the heirs of the estate to solicit further bids, informing her that she had an obligation to obtain the highest price for the property. The executrix asserts that she objected to the solicitation of further bids from the heirs. Anetakis asserts that she did not object. By letter dated December 30, 1971, Anetakis informed the heirs that the executrix had exerted herself in obtaining the highest bid possible on the property, and that unless a higher bid was received in seven days, the offer of $28,000 would be accepted. The executrix did not receive a copy of the letter, but was aware of its existence.

At about this same time, Anetakis contacted the attorneys for Smith and his partner, Dino Rotellini, and informed them that a written offer was necessary. Bell, by letter dated January 4, 1972, sent Anetakis a written option agreement and a check in the amount of $500 signed by both Smith and Rotellini and made payable to Anetakis. The letter requested Anetakis to obtain the signatures of the executrix and Flora Latimer on the option agreement and stated that the option would become firm on January 24, 1972, unless one or more of the heirs tendered a higher offer.

On January 6, 1972, Anetakis received two written offers to purchase the estate property in response to the letters sent to the heirs. The first, submitted by William and Charles Latimer, children of the decedent and named distributees of the proceeds of the sale under the terms of the will, was an offer of $30,000 and was secured by a $100 deposit check. The second offer, in the amount of $30,200, was submitted by Arthur Latimer later that same day. Anetakis informed the executrix of the offers and announced his intention to send another letter to the heirs requesting sealed bids. The executrix protested the sending of this letter on the ground that she had already sold the property to Smith and Rotellini and called Smith to inform him that she had received neither the $500 deposit check nor the written option agreement. She also advised Smith of Arthur Latimer's bid and of her objection to the letter soliciting further bids. On January 7, 1972, Smith personally delivered to the executrix a check for $500 payable to her and signed by both Smith and Rotellini as a "binder" on the offer of $28,000. Smith instructed his attorneys to draw up a written objection to the further solicitation of sealed bids.

On January 7, Anetakis advised Bell and McMullen of Arthur Latimer's higher bid. He testified that Bell and McMullen did not object to consideration of Arthur Latimer's bid so long as their clients would be offered an opportunity to submit another bid. In a letter to Anetakis dated January 8, 1972, however, Bell indicated that he was

of the opinion that the estate was obligated to sell the property to his clients and enclosed a written sales agreement. Meanwhile, Anetakis sent another letter to the heirs of Charles Latimer and to Bell stating that a bid in the amount of $30,200 had been submitted by Arthur Latimer and would be accepted if no higher offer was received by January 12, 1972. On January 12, 1972, Arthur Latimer submitted to Anetakis a check in the amount of $500, payable to the executrix, as a down payment on his offer of $30,200. The executrix refused to accept this offer and, on April 26, 1972, she executed a deed conveying the estate property to Mountaineer Construction, assignee of Smith and Rotellini.

■ We think these facts clearly demonstrate that the executrix breached her fiduciary duty in refusing to consider Arthur Latimer's bid of $30,200. Her obligation was to dispose of the estate property upon the most advantageous terms it was possible to secure for the benefit of the estate. Arthur Latimer's offer was for a substantially greater amount than Smith's offer of $28,000 and was submitted only nine days afterwards. At that point there had been no formal action taken to execute the conveyance to Smith except the mailing to Anetakis of the written option agreement.

The trial court found, however, that the executrix felt herself obligated to fulfill the terms of her oral agreement to sell the property to Smith and Rotellini. The court concluded that since there was no fraudulent intent on the part of the executrix and since her refusal to accept Arthur Latimer's bid was predicated upon her desire to carry out what she perceived as a moral obligation, the executrix had committed no breach of her fiduciary duty to the material disadvantage of the beneficiaries.

■ We think the trial court's conclusion was founded upon an erroneous view of the law. There was no binding contract of sale in existence prior to the time that the executrix was notified of the higher price. The fiduciary duty owed by an executor or administrator to the beneficiaries of the estate is paramount to any moral obligation that may exist between the personal representative and some third party. The fact that the personal representative has orally agreed to sell the real property prior to receipt of a substantially better offer does not justify a violation of his or her fiduciary duty. *In re Herbert's Estate*, 356 Pa. 107, 51 A.2d 753 (1947); *Weinstein v. Boyd, supra. See also Probert v. Garrett*, 221 Md. 188, 156 A.2d 651 (1959); *Kane v. Girard Trust Co.*, 351 Pa. 191, 40 A.2d 466 (1945); *In re Orr's Estate*, 283 Pa. 476, 129 A. 565 (1925).

■ It is clear that the duty of the executrix to consummate her oral agreement to sell the property to Smith and Rotellini was, at most, a moral obligation. At the time the executrix was informed of Arthur Latimer's higher offer there was no written contract for the sale of the land to Smith and Rotellini. Under the statute of frauds, W.Va.Code § 36-1-3 (1966), the executrix' oral acceptance of Smith's offer would have been unenforceable at law had she chosen to accept Arthur Latimer's bid.[2] The law does not permit a personal representative to give precedence to a moral obligation over his legal duty to act in the best interests of the estate. The refusal of the executrix to accept Arthur Latimer's bid of $30,200 and her subsequent conveyance of the estate property to Smith for a purchase price of $28,000 constituted a breach of her fiduciary duty. For this reason the trial court erred in refusing to set aside the sale and we reverse.

■ The appellees argue, however, that the executrix was not required to consider Arthur Latimer's higher offer because her attorney acted without authority when he solicited bids from the heirs over the objections of the executrix. Proceeding on an agency theory, the appellees contend that

2. Of course, the statute of frauds is a defense personal to the parties to a contract, which cannot be raised by third persons to invalidate the agreement if the parties to the contract choose to abide by their agreement. *Tanner v. McCreary*, 88 W.Va. 658, 107 S.E. 405 (1921). For this reason the appellants cannot be heard to complain that no contract existed between the executrix and Smith.

Anetakis' authority to solicit bids terminated when the executrix informed him that she had sold the property to Smith and protested his proposal to seek further offers from the heirs. They argue that since Anetakis' authority to act as the executrix' agent had been terminated, the executrix was not required to consider any bids submitted as a result of Anetakis' solicitation. We think the agency issue raised by the appellees is not relevant to the outcome of this case for the reason that the executrix was obligated to solicit further bids from Arthur Latimer in the same manner as she apparently did when negotiating with Smith, and would have been subject to charges of breaching her fiduciary duty had Anetakis not done so.

■ Generally, the heirs to the estate have no greater right to bid on estate property than do the general public. *Motyka v. Nappier,* 6 N.C.App. 544, 170 S.E.2d 353 (1969). Here, however, Arthur Latimer had previously submitted a bid of $25,200 in his capacity as president of Arthur L. Latimer Construction Company. When the executrix orally accepted Smith's offer of $28,000, she was aware that Arthur Latimer had exhibited an interest in purchasing the property and that neither she nor Anetakis had responded to his prior offer, either to accept or to reject it. These circumstances gave rise to a reasonable expectation on the part of the executrix of receiving a higher bid from Arthur Latimer. Yet there is no indication on the record that the executrix made any effort to investigate the possibility that Arthur Latimer would offer more than $28,000.

■ We do not think that these facts demonstrate that the executrix exercised reasonable diligence and ordinary care in soliciting the highest possible bid on the property. When the personal representa-

tive has received an offer to buy estate property and has made no attempt to inform the person tendering the offer whether the bid has been accepted or rejected, before accepting another offer, the personal representative must, in fulfilling his or her fiduciary obligation to the estate, afford the prior bidder an opportunity to tender a higher offer. We think the executrix was obligated to at least inquire of Arthur Latimer whether he was willing to offer more than $28,000 for the property. If she had failed to do so, she would have been guilty of breaching her duty to act diligently in the best interests of the estate. Whether Anetakis had the authority to take this action on her behalf is essentially irrelevant since in so doing, he was protecting the executrix and aiding her in fulfilling her legal obligations.

■ The appellees also assert in their briefs that Arthur Latimer does not have standing to maintain this action.[3] They contend that he was not a party interested in the estate since he was not named beneficiary of the proceeds of the sale. As a general rule, persons who have no interest in a decedent's estate do not have standing to object to the sale of estate property. *In re Van Der Werfs' Estate,* 243 Iowa 1162, 53 N.W.2d 238 (1952); *Boccuti v. Roycroft,* 166 Md. 542, 171 A. 35 (1934); *Balaban v. Bank of Nevada,* 86 Nev. 862, 477 P.2d 860 (1970). Persons who have been held to have an interest in an estate include heirs, devisees, legatees, distributees, creditors and purchasers of estate property. *Estate of Cahoon,* 101 Cal.App.3d 434, 161 Cal. Rptr. 651 (1980); *In re Pearsons,* 98 Cal. 603, 33 P. 451 (1893); *Collins v. Collins,* 162 Ga. 35, 42, 132 S.E. 389 (1926); *In re Van Der Werfs' Estate, supra; Boccuti v. Roycroft, supra; Martien v. Crystal,* 137

---

**3.** The question of the standing of Arthur L. Latimer Construction Company to bring suit was raised and discussed below. The trial court found that the corporation had no standing since there was no agreement entered into between the executrix and the corporation. Indeed, it appears that the only possible interest of the corporation in the estate would be as an unsuccessful bidder by virtue of the offer tendered by Arthur Latimer on June 24, 1971. As

we note *infra,* unsuccessful bidders have no interest in the decedent's estate which would entitle them to maintain suit to challenge the sale of the property by the executor of the estate. The fact that the failure of the executrix to offer the corporation an opportunity to tender a higher bid may result in a breach of her fiduciary duty, as discussed above, does not affect the question of the corporation's standing to sue.

Md. 166, 111 A. 820 (1920); *Balban v. Bank of Nevada, supra; Bilang v. Benson,* 62 Ohio App.2d 134, 405 N.E.2d 311 (1978); *In re Schole's Estate,* 49 Wash.2d 325, 301 P.2d 172 (1956). Unsuccessful bidders have no interest in the decedent's estate which would entitle them to challenge the sale of estate property by a personal representative. *Estate of Cahoon, supra; Terry v. Clothier,* 1 Wash. 475, 25 P. 673 (1890); *Balban v. Bank of Nevada, supra; In re Schole's Estate, supra.*

This principle has been recognized by our Court in other contexts. In *State ex rel. Linger v. County Court,* 150 W.Va. 207, 144 S.E.2d 689 (1965), the Court held that where a statute provided that the administrator of the estate of an intestate was to be selected from the distributees of the estate or from persons nominated by the distributees, persons who were not distributees under the statute of descent and distribution had no standing to object to the appointment of and administrator. In *Sands v. Security Trust Company,* 142 W.Va. 522, 102 S.E.2d 733 (1958), it was held that the testator's heirs and next of kin had no right to bring suit to declare a testamentary trust void where the will contained no defeasance clause and provided that if the trust failed, the remainder was to be distributed to a religious organization.

 It is true that under the terms of the will Arthur Latimer has no interest in the property or the estate which would entitle him to maintain this action. Charles Latimer's will specifically provided that the proceeds of the sale of his real property were to be divided among nine named beneficiaries, including his wife. Arthur Latimer was not included among those beneficiaries and is not entitled to any share of the proceeds from the sale. Under the terms of the will he has no interest in the property conveyed which would give him standing to challenge the actions of the executrix.

However, while Arthur Latimer does not have standing as a beneficiary or distributee of the deceased, we think he does have an interest in the estate sufficient to give

him standing to sue. His interest arises from having made a subsequent higher offer for the property which the executrix was bound by her fiduciary duty to consider and to accept in the absence of a more advantageous offer from another party. Arthur Latimer is not merely an unsuccessful bidder. He is not attempting to have the sale set aside because someone else made a higher offer which the executrix accepted. Rather, he has an interest in the property because but for the executrix' breach of her fiduciary duty he would have acquired title to the land. In such circumstances, Arthur Latimer is sufficiently interested in the estate property to have standing to maintain this action. Likewise, he is a real party in interest entitled to seek equitable relief of recision of the deed. *See Leatherman v. Sanders,* 117 W.Va. 320, 185 S.E. 556 (1936); *State ex rel. Alpine Oil Co. v. Arthur,* 106 W.Va. 559, 146 S.E. 619 (1929); *Skeen v. Parsons,* 94 W.Va. 584, 119 S.E. 681 (1923).

We conclude, therefore, that Martha Latimer Mechling breached her fiduciary duty as executrix of the estate of Charles W. Latimer. The judgment of the Circuit Court of Brooke County affirming the sale of estate property to Mountaineer Construction and Engineering Company was clearly wrong and is reversed. We decline, however, to grant the specific performance sought by Arthur Latimer. It appears from the record that Smith and Rotellini would have been willing to submit a higher bid had the executrix been willing to consider Arthur Latimer's offer of $30,200. Since there is no evidence of wrongdoing on their part, it appears to the Court that the interests of the estate, as well as equity, would best be served by allowing Smith and Rotellini, or their assignee, Mountaineer Construction, an opportunity to submit an offer in excess of $30,200, with the right to overbid reserved to Arthur Latimer. Such a resolution would inure to the benefit of those entitled to the proceeds of the sale and would resolve this dispute in an equitable manner. Consequently, we remand the case to the lower court with instructions that the deed conveying the estate property to Mountaineer Construc-

tion and Engineering Company be set aside, that the property be sold to the highest bidder in accordance with the principles ennunciated herein and that Flora Latimer be awarded her dower share of the amount of the purchase price which exceeds $28,-000.

Reversed and remanded with instructions.