569 S.E.2d 778

**Angela L. LANG, Plaintiff Below, Appellant,**

v.

**Robert S. DERR and Florence W. Derr, Defendants Below, Appellees.**

No. 29959.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2002.

Decided May 3, 2002.

---

John W. Askintowicz, III, Esq., Charles Town, for Appellant.

Garry G. Geffert, Esq., WV Legal Services Plan, Inc., Martinsburg, for Appellees.

PER CURIAM.

This is an appeal by Angela Lang from an order of the Circuit Court of Jefferson County which declared that a contract entered into by her and Robert S. Derr and Florence W. Derr was a valid and enforceable contract. On appeal, the appellant claims that the evidence demonstrates that the contract was unconscionable and that under the circumstances, the court should have declared it void and unenforceable. After reviewing the questions presented and the record, this Court agrees with the appellant's assertions.

I.

FACTS

The record in this case shows that in 1985 or 1986, the appellee, Florence W. Derr, moved into the household of Robert W. and Nancy Welsh as a paying boarder. At the

time, the appellant, who is the Welshes' daughter, was a minor and living at home.

Shortly after Florence Derr moved into the Welsh household, Ms. Welsh was diagnosed with cancer and became bedridden, and Florence Derr undertook to care for her and also did cleaning and cooking for the Welsh family, including the appellant. This continued until Ms. Welsh died.

After the death of Ms. Welsh, Florence Derr continued to live with Mr. Welsh and the appellant, and according to the record, helped maintain the household. Sometime later, Ms. Derr's husband, the appellee, Robert Derr, also moved into the Welsh household.

In 1994, Robert W. Welsh was diagnosed with cancer, and the Derrs cared for him until his death on August 19, 1998. Upon his death, the appellant Angela Lang became his sole heir of his estate which was later appraised as having probate assets worth $68,929.33, and which, by some accounts, was actually worth in excess of $90,000.

Less than a week after Mr. Welsh's death, the appellant, on August 25, 1998, was asked to sign, and did sign, a typed statement called a "Consent to Qualify" in which she waived her right to serve as administratrix of her father's estate, and consented to the qualification of the Derrs as co-administrators of the estate. On the next day, August 26, 1998, the appellant signed the contract which is in issue in the present case. Under the contract, she agreed to sell the Derrs her entire interest in the estate for $100. The contract stated: "I, *Angie L. Lang*, and all heirs do hereby agree that once the estate of Robert William Welsh is settled, I agree to sell this estate to *Robert S. Derr* and/or *Florence W. Derr* for the sum of $100.00"

Sometime after signing the contract, and apparently after talking to an aunt, the appellant changed her mind, and on October 15, 1998, she instituted the present declaratory judgment action. In her complaint, she alleged, among other things, that she had difficulty in comprehending written words and that the Derrs had fraudulently and intentionally coerced her into signing the contract. She also alleged that the contract was unconscionable. She prayed that the court declare the contract null and void.

A bench trial was conducted in the case, and, after the trial, on January 10, 2001, the court entered an order holding that the contract was a valid contract. The court found that there was no showing that the contract had been obtained by fraud. The court also found that the appellant understood what she was doing at the time she signed the contract and that it could not, thus, be held unconscionable. The court further noted that while the payment of $100 for the estate might seem small, in light of the long history of the close relationship between the appellant and the Derrs, and in light of the fact that the Derrs had cared for the appellant's mother and father, as well as the appellant, the contract was not unconscionable.

In the present appeal, the appellant argues that the contract was unconscionable and that the court erred in holding that it was a valid contract.

## II.

### STANDARD OF REVIEW

 In Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), the Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

## III.

### DISCUSSION

As has previously been indicated, the appellant's claim in the present appeal is that the contract which she entered into with Robert S. Derr and Florence W. Derr was unconscionable, and that as a consequence, the trial court should have held the contract invalid.

 This Court has recognized that a contract may be invalidated because of so-called "unconscionability." *See, e.g., Arnold v. United Companies Lending Corporation,* 204 W.Va. 229, 511 S.E.2d 854 (1998); *Troy Min-*

*ing Corporation v. Itmann Coal Company,* 176 W.Va. 599, 346 S.E.2d 749 (1986); *McMellon v. Adkins,* 171 W.Va. 475, 300 S.E.2d 116 (1983). The Court has also recognized that, generally, Restatement (Second) of Contracts § 208 (1981), articulates what constitutes unconscionability in West Virginia. *See,* n. 1, *Troy Mining Corporation v. Itmann Coal Company, supra.* That Restatement section provides: "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."

■ The comment on the Restatement section indicates that generally at least two things must be present for a contract to be unconscionable, such as to justify a court refusing to enforce it. First, there must be an inadequacy of consideration. As stated by the Restatement: "Inadequacy of consideration does not of itself invalidate a bargain, but gross disparity in the values exchanged may be 'an important factor in a determination that a contract is unconscionable and may be sufficient ground, without more, for denying specific performance." The second factor normally considered in determining whether a contract is unconscionable is whether the parties were in unequal bargaining positions at the time they entered into the contract. The Restatement indicates that a number of factors can shed light upon the bargaining positions of the parties. Specifically, the Restatement says that, "knowledge of the stronger party that the weaker party is` unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors" are factors bearing upon whether the parties were equal in the bar-

gaining process. Restatement (Second) of Contracts § 208 cmt. (1981).

■ In *Art's Flower Shop, Inc. v. C & P Telephone Company,* 186 W.Va. 613, 413 S.E.2d 670 (1991), this Court essentially adopted the points discussed in the comment on the Restatement section. In Syllabus Point 4 of *Art's Flower Shop, Inc. v. C & P Telephone Company, id.,* the Court stated: "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'"

■ In analyzing the case presently before the Court, the Court notes that the contract which the appellant signed calls for her to receive $100 for her entire interest in her father's estate, which is worth at least $60,000 and possibly worth over $90,000. Thus, the appellant has agreed to accept $100 for assets which were worth some 600 to 900 times that amount. The Court believes that this can only be interpreted as indicating that there was a gross disparity in the values to be exchanged under the contract.[1]

Apart from the evidence of the disparity in the values exchanged under the contract, there is evidence which shows that the appellant was a child during much of the time when the Derrs resided with her parents and that, in certain respects, they exercised parental authority over her. The evidence also shows that the appellant is deaf and that the contract in question in the case was entered into a week after the death of her father during a period when the appellant was arguably suffering from disorganization and grief as a result of the death of her sole surviving parent. Finally, the Court has examined the record in this case and believes that the

1. The Court notes that the trial court suggested that there might have been additional consideration given by the Derrs, that consideration being the services previously rendered by the Derrs to the appellant's mother and father. Clearly, the contract did not indicate that the prior services were to be consideration, and there is no evidence that Mr. Welsh, or Mrs. Welsh, at the time the services were rendered, agreed to give

the Derrs his estate for the services. In like cases, this Court has indicated that services rendered and benefits conferred gratuitously in the past do not constitute a sufficient consideration for a subsequent promise to pay therefor, and, in effect, cannot constitute consideration for a subsequent contract. *Cox v. Davis,* 85 W.Va. 604, 102 S.E. 236 (1920); *see also, Hopkins v. Wilkinson,* 115 W.Va. 32, 174 S.E. 564 (1934).

circuit court's conclusion that the appellant entered into the contract with a full understanding of its consequences and an independent desire to do so is not supported by the evidence presented. For instance, the appellant was questioned about her understanding of her father's estate and the appointment of Robert and Florence Derr as co-administrators of his estate. The testimony proceeded as follows:

Q. Did your father have a will?

A. Yes.

Q. What happened to it?

A. Did he work?

Q. No, did he have a will when he died? Did he have a will?

A. No.

(WHEREUPON, the document presented was marked as Deposition Exhibit Number One for identification purposes.)

Q. Mrs. Lang, I'm going to show you a one page document. It's been marked Exhibit Number One. I want you to take a minute and look at that please. Have you seen this document before? (Indicating)

A. Yes.

Q. Is that your signature? (Indicating)

A. Yes.

Q. What do you understand this document to mean? (Indicating)

A. I didn't hear you.

Q. What does this document mean? (Indicating)

A. Why or . . .

Q. What does it mean? Let me ask it a different way.

A. Could you repeat it again? Because Flo and Scott were co-administrators.

Q. Why did they become co-administrators?

A. I don't know.

Q. Well, why didn't you become administrator?

A. I don't know.

Q. Did you want to do that?

A. No.

Q. So you asked them to do it, right?

A. Yes.

Q. Because somebody had to do it, isn't that right?

A. Yes.

Q. Did your aunt, Ellen want to be administrator?

A. I didn't know what co-administrators meant.

Q. Why did you sign the paper?

A. I didn't sign it first.

Q. Who did?

A. Frank [the appellant's husband] did.

Q. Well, all right. Why was it signed?

A. Huh?

Q. Where were you when this paper was signed?

A. My house, outside in the driveway.

Q. Did you talk to Frank about signing it?

A. Yes.

Q. What did you talk about?

A. If he wanted Flo and Scottie to be co-administrators. He said go ahead and sign it, so he signed it first.

Q. Then you signed it?

A. Then he told me to sign it, yes.

Q. Did Mr. and Mrs. Derr make you sign it?

A. No.

Q. What did you think would happen after you signed this? (Indicating)

A. Could you repeat please?

Q. What did you think would happen after you signed this exhibit, Exhibit One?

A. I don't know. I don't know.

Q. Did you think you would have to do anything with your father's estate?

A. I don't know.

At another point, the appellant in response to leading questions at one point affirmatively indicated that she wished to sell Robert

and Florence Derr her father's house. However, when questioned about the circumstances surrounding the signing of the contract in question, the appellant testified as follows:

Q. And did the notary ask you if you understood what was on the paper?

A. Yes.

Q. What did you tell her?

A. I can't remember.

Q. You told her you understood it didn't you?

A. Yes.

Q. Why were you going to sell the house to Mr. and Mrs. Derr for either one hundred or one thousand dollars?

MR. ASKINTOWICZ: I believe it's her understanding that the estate was going to be sold.

Q. Why were you going to sell the estate for that money?

A. I don't know.

Q. Well, why did you sign the paper?

A. Huh?

Q. Why did you sign the paper?

A. I couldn't hear you, I'm sorry. I don't know.

At another point, the appellant was asked to read a sentence from the complaint in the case and to explain what it meant. The testimony proceeded as follows:

Q. I want you to look on the second page of Exhibit Three, paragraph number 14. Would you read out loud for me please?

A. Which one?

Q. Number 14, right there. (Indicating)

A. This one? (Indicating)

Q. Yes, ma'am.

A. That the defendants, Robert S. Derr and Florence W. Derr fraudulently and intentionally—I don't know that word—Angela L. Lang into—tax. (sic.)

Q. Do you know what that sentence means? (Indicating)

A. Sir?

Q. Do you know what that sentence means? (Indicating) Can you explain that to me?

A. No, I don't.

Q. Did you know what it meant when you signed the paper?

A. No.

■ After reviewing the record in this case, this Court believes that it shows that the parties were not in equal bargaining positions and that, contrary to the trial court's conclusion, the record fails to establish that the appellant entered into the contract with a full understanding of its consequences. Under the circumstances, given the uneven bargaining positions of the parties and the inequality of the values exchanged by the parties, the Court concludes that the contract was, in fact, unconscionable under the law of West Virginia.[2]

2. Although not directly raised by the parties, the Court is concerned about another aspect of this case. The Derrs were co-administrators of Robert Welsh's estate, and the subject of the contract was the estate itself. The Court notes that the Restatement of Contracts (Second) recognizes that if there·is a fiduciary relationship between the parties to a contract, additional scrutiny must be given to the contracting process. Specifically, Restatement (Second) of Contracts § 173 (1981) states: "If a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary, unless (a) it is on fair terms, and (b) all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know." An illustration given under the comment to this section covers a situation somewhat similar to the situation in the present case. The illustration provides:

A, the executor of a will under which a tract of land has been devised to B, makes a contract with B to buy the tract from him. Before making the contract, A tells B all relevant facts about the transaction. The contract is voidable by B unless the court concludes that it is on fair terms."

Restatement (Second) of Contracts § 173 cmt. illus. (1981).

This Court has plainly stated that:

The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf. In the discharge of this duty, the executor or administrator of a deceased's estate is held to the highest degree of good

For the reasons stated, the judgment of the Circuit Court of Jefferson County is reversed, and this case is remanded with directions that the court enter judgment for the appellant, Angela L. Lang.

Reversed and remanded with directions.

faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs. Syllabus Point 1, *Latimer v. Mechling*, 171 W.Va. 729, 301 S.E.2d 819 (1983). In the same case, the Court has indicated that if a personal representative of an estate undertakes to sell property of the estate, his fiduciary obligation requires him to secure the best price obtainable under the circumstances. The Court believes that it is im-

plicit in this, as it is in § 173 of the Restatement, that it is inappropriate for a fiduciary to sell to himself, or for him to contract to buy from an estate, property of the estate for an amount which is unfair.

While it is not clear that the Derrs were actually fiduciaries of the estate of Robert W. Welsh at the time the contract in the present case was entered into, it is clear that the relationship was contemplated and that Angela Lang had already consented to their being fiduciaries.